RONALD K. ALBERTS (SBN 100017)
TAD A. DEVLIN (SBN 190355)
GORDON & REES LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111
Telephone: (415) 986-5900
Facsimile: (415) 986-8054

Attorneys for Defendants
THE PRUDENTIAL INSURANCE CO. OF AMERICA, Real Party in Interest, and TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM DISABILITY PLAN

# UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA BURGESS,<br><br>　　　　Plaintiff,<br>　vs.<br><br>TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM DISABILITY PLAN<br><br>　　　　Defendant,<br><br>THE PRUDENTIAL INSURANCE COMPANY OF AMERICA<br><br>　　　　Real Party in Interest. | CASE NO. C07-05310 (JSW) (ADR)<br><br>**DEFENDANT'S OPPOSITION TO MOTION TO ALLOW DISCOVERY AND THE DECLARATION OF TAMIKA S. WILLIAMS IN SUPPORT THEREOF** |

TO THE COURT, ALL PARTIES HEREIN, AND TO THEIR RESPECTIVE COUNSEL OF RECORD:

PLEASE TAKE NOTICE that Defendants THE PRUDENTIAL INSURANCE CO. OF AMERICA, Real Party in Interest, and TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM DISABILITY PLAN (collectively, "Prudential) hereby submit their

///

///

Memorandum of Points and Authorities in Opposition to Plaintiff's Motion To Allow Discovery and the Declaration of Tamika S. Williams in support thereof.

DATED: June 5, 2008

                                      GORDON & REES LLP

By /s/ Ronald K. Alberts
   Ronald K. Alberts
   Tad A. Devlin
   Attorneys for Defendants
   THE PRUDENTIAL INSURANCE CO. OF AMERICA, Real Party in Interest, and TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM DISABILITY PLAN

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................................4

I.   INTRODUCTION ...............................................................................................................5

II.  BACKGROUND .................................................................................................................5

III. LEGAL ANALYSIS ............................................................................................................7

    A.   THE *DE NOVO* STANDARD OF REVIEW APPLIES TO THIS CASE .............7

    B.   DISCOVERY IS PERMITTED ONLY UNDER EXCEPTIONAL CIRCUMSTANCES ...........................................................................................................7

    C.   PLAINTIFF MISSTATES THE APPLICABLE TEST FOR DETERMINING A RIGHT TO CONDUCT DISCOVERY ...............................9

    D.   PLAINTIFF HAS NOT SATISFIED HER BURDEN OF ESTABLISHING A RIGHT TO DISCOVERY ........................................................9

        1.   Information Regarding the Number of Dr. Howard's and MLS's Disability Reports ..................................................................................................10

        2.   Information Regarding The "Disposition" Of Disability Reports ............11

        3.   Documents Relating To Changes To The Policy ....................................12

IV. CONCLUSION ..................................................................................................................14

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

# **TABLE OF AUTHORITIES**

**Cases**

*Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006),........................................7, 8

*Bursell v. General Elec. Co.*, 342 F.Supp.2d 460 (D.S.C. 2004) ................................................10

*Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 ..................................................................7

*Mizzell v. Paul Revere Ins. Co.*, 278 F.Supp.2d 1146, 1150 fn.6 (C.D. Cal. 2003) ......................8

*Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*,
   46 F.3d 938 (9th Cir. 1995) ............................................................................... 7, 8, 9, 10

*Opeta v. Northwest Airlines Pension Plan for Contract Employees*,
   46 F.3d 1211 (9th Cir. 2007) .........................................................................................9

*Quesinberry v. Life Ins. Co. of North America*, 987 F.2d 1017 (4th Cir. 1993) .........................7, 8

*Silver v. Executive Car Leasing Long-Term Disability Plan*, 466 F.3d 727 (2006)...................8, 9

*Thomas v. Continental Cas. Co.*, 7 F.Supp. 1048 (C.D. Cal. 1998)..............................................9

**Statutes**

ERISA ...................................................................................................5, 7, 8, 9, 10, 12, 14

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

This action calls for this Court to conduct a *de novo* review of an administrative record created in connection with Plaintiff's claim for long term disability benefits available through an employee welfare benefit plan ("the Plan") established by her employer. Plaintiff's claim is governed by ERISA. The Plan's benefits were insured by Defendant The Prudential Insurance Company of America ("Prudential").

Discovery in an ERISA case, where the claim determination is reviewed *de novo*, is permitted only under exceptional circumstances. No discovery is permissible unless the circumstances clearly establish that the information sought is "necessary" for the Court to conduct an "adequate" review. Plaintiff hopes to serve interrogatories and document requests without satisfying her burden of first establishing that the Court is unable to conduct an adequate review of the administrative record in the absence of the information requested. Instead of satisfying the appropriate burden, Plaintiff's Opposition reveals that she seeks information only because she believes it to be "relevant." This is not good enough. Because Plaintiff has not satisfied the heavy burden of establishing an exception to the general prohibition of discovery in an ERISA matter, her motion should be denied.

## II. BACKGROUND

Plaintiff claims that she is totally disabled based, in large part, upon a diagnosis of fibromyalgia. She submitted a claim for benefits under the Plan. Prudential concluded, based upon the administrative record, that Plaintiff was not disabled under the terms of the Plan and denied her claim. As part of its review of Plaintiff's claim, Prudential obtained a medical opinion from Dr. Paul Howard, a Board Certified Rheumatologist. On July 24, 2007, Dr. Paul F. Howard, Rheumatologist, reported on his review of Burgess' medical records. See Declaration of Tamika S. Williams and Exhibit 1 attached thereto. Dr. Howard concluded that, as of

November 14, 2005, Burgess had fibromyalgia, diagnosed by three different doctors, with widespread tender points extending over her upper and lower back, anterior chest wall and knees, without evidence of significant osteoarthritis or inflammatory arthritis for autoimmune disorder. Burgess had "no evidence of rheumatologic impairment associated with fibromyalgia based on the absence of any loss of range of motion in peripheral joints, absence of inflammatory or significant mechanical arthritis, loss of coordination or range of motion in any of the peripheral joints, demonstrated motor weakness or atrophy."

Dr. Howard stated "the presence of widespread tender points does not translate, in and of itself, into any functional impairment in the absence of other corresponding findings of functional loss." Although her evaluations from 1999 through September 2006 show a "constant level of widespread tender points," there were no other objective rheumatologic findings in Burgess' medical records.

Dr. Howard further noted Burgess had peripheral neuropathy involving the lower extremities and her feet, but she cannot be diagnosed with tarsal tunnel "based on the presence of bilateral axonal degeneration involving her feet." The records do not show "a metabolic cause for the peripheral neuropathy based on laboratory testing" but indicate the condition may be "associated with high arches."

Dr. Howard noted that Dr. Davis reported Burgess was unable to stand for more than three minutes and must elevate her feet. However, elevation of the feet is not a treatment for peripheral neuropathy in the absence of edema. As of December 1, 2005, Burgess could wear shoes without difficulty. None of Burgess' other doctors noted her edema or inability to wear shoes. Burgess' medical records contained no measurement of her ability to stand. The conclusion Burgess was unable to stand for more than three minutes was self-reported and unsupported by other evidence.

Dr. Howard noted Burgess had been diagnosed with neuropathy which causes a mild degree of functional impairment. As a result, Burgess' ability to stand and walk was limited. The impairment was due to "paresthesias in the distal lower extremities with diminished reflexes." Based on her neuropathy, Dr. Howard concluded Burgess had evidence of mild

impairment at times limiting her ability to stand and walk. Burgess' walking and standing were restricted to 30 minutes at a time and two hours cumulatively in an eight hour time period. However, she had no limitation on her ability to "sit, reach, lift, carry, and/or perform repetitive and fine motor hand activities."

### III. LEGAL ANALYSIS

#### A. THE *DE NOVO* STANDARD OF REVIEW APPLIES TO THIS CASE

As explained in Plaintiffs' brief, the parties agree that the de novo standard of review must be applied to this case. Therefore, this Court should review the denial of benefits de novo "regardless of whether the administrator or fiduciary is operating under a possible or actual conflict of interest." See *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 963 (9th Cir. 2006), citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115.

Because the de novo standard is to be applied, this Court's determination does not turn upon Prudential's actions at the administrative level. Instead, on de novo review, the Court "simply proceeds to evaluate whether the plan administrator correctly or incorrectly denied benefits." *Abatie, supra*, 458 F.3d at 963. In other words, under de novo review, the Court determines for itself whether the Plaintiff is entitled to benefits or not.

#### B. DISCOVERY IS PERMITTED ONLY UNDER EXCEPTIONAL CIRCUMSTANCES

Discovery is only permitted in an ERISA case under exceptional circumstances. In *Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan*, 46 F.3d 938, 943-44 (9th Cir. 1995), the Ninth Circuit held that a District Court has limited discretion to admit evidence outside of the administrative record in an ERISA case where the de novo standard of review is applied. However, even under the de novo standard, extrinsic evidence may only be admitted under "certain circumstances" and for the sole purpose of enable[ing] "the full exercise of informed and independent judgment." Id. at 943. The *Mongeluzo* Court quoted favorably from an opinion of the Fourth Circuit Court of Appeals describing the narrowness of the exception to the general rule precluding extrinsic evidence. *Ibid.* (quoting *Quesinberry v. Life Ins. Co. of*

*North America*, 987 F.2d 1017, 1025 (4th Cir. 1993)).[1] The Ninth Circuit adopted the following language of the Fourth Circuit, with emphasis added, as the Ninth Circuit's rule of discovery in an ERISA case:

> "We . . . believe that the purposes of ERISA . . . warrant significant restraints on the district court's ability to allow evidence beyond what was presented to the administrator. In our view, the most desirable approach to the proper scope of *de novo* review under ERISA is one which balances the multiple purposes of ERISA. Consequently, we adopt a scope of review that permits the district court *in its* discretion to allow evidence that was not before the plan administrator. The district court should exercise its discretion, however, <u>only when circumstances clearly establish that additional evidence is necessary to conduct an adequate *de novo* review of the benefit decision</u>. In most cases, where additional evidence is not necessary for adequate review of the benefits decision, the district court should only look at the evidence that was before the plan administrator . . . at the time of the determination."

Plaintiff's correspondence to Prudential's counsel on May 9, 2008, attached to the Declaration of Karen Wind in support of the motion, suggests that the *Abatie* decision is important to deciding whether she is entitled to conduct discovery in this case - although the argument is not explained with a great deal of particularity. Plaintiff's contention on this point is inaccurate. The *Abatie* decision in 2006 left the Ninth Circuit's marked restrictions upon discovery in an ERISA action employing the *de novo* standard unchanged. See generally *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (2006). Although the *Abatie* decision addressed the extent to which extrinsic evidence of a plan administrator's conflict may be considered by the District Court when deciding the degree of deference to give the administrator's decision, this analysis only applies to <u>abuse of discretion</u> review. *Abatie* did not concern itself with consideration of extrinsic evidence when conducting a *de novo* review.

That *Abatie* did not alter the *Mongeluzo* rule regarding discovery is confirmed by the Ninth Circuit's reliance upon *Mongeluzo*, after *Abatie*, to support its holding that extrinsic evidence is only admissible in an ERISA action when circumstances "clearly establish" that an "adequate *de novo* review of the benefit decision" requires its admission. *Silver v. Executive Car*

---

[1] In *Mizzell v. Paul Revere Ins. Co.*, 278 F.Supp.2d 1146, 1150 fn.6 (C.D. Cal. 2003), the District Court described the holding in *Mongeluzo* as creating a "discovery exception."

Gordon & Rees LLP
Embarcadero Center West
275 Battery Street, Suite 2000
San Francisco, CA 94111

*Leasing Long-Term Disability Plan*, 466 F.3d 727, 731 fn2 (2006); *Opeta v. Northwest Airlines Pension Plan for Contract Employees*, 46 F.3d 1211, 1217 (9th Cir. 2007).

### C.  PLAINTIFF MISSTATES THE APPLICABLE TEST FOR DETERMINING A RIGHT TO CONDUCT DISCOVERY

Plaintiff asserts that she is entitled to conduct discovery because her proposed discovery is "relevant" (opening brief, pg. 6) and responses "may show bias by Prudential's hired consultants and that Prudential may be a neutral administrator with respect to this particular Plan." (Opening Brief, pg. 4 (lns. 13-15) and pg. 6 (ln. 21).

Plaintiff's failure to mention (or even cite) *Mongeluzo*, the controlling authority pertaining to the right to discovery in an ERISA case, may explain her error. As stated above, the appropriate test for determining whether to allow discovery in an ERISA case is whether circumstances "clearly establish" that the information is "necessary" to conduct an "adequate *de novo* review." The standard is *not*, as Plaintiff suggests, whether the discovery "may show" something that the Plaintiff considers "relevant" to the issues. If Plaintiff's standard were adopted, discovery would be permitted in an ERISA action in the same manner as allowed normally in litigation. The Ninth Circuit's unambiguous limitation on discovery in an ERISA matter would be rendered meaningless.[2]

### D.  PLAINTIFF HAS NOT SATISFIED HER BURDEN OF ESTABLISHING A RIGHT TO DISCOVERY

Because discovery in an ERISA case is permitted only as an exception to the general rule precluding discovery, Plaintiff, as the person seeking to conduct discovery in this case, bears the burden of showing that exceptional circumstances exist here which "clearly establish" that the information she is seeking through discovery is "necessary" to conduct an "adequate *de novo* review." See *Thomas v. Continental Cas. Co.*, 7 F.Supp. 1048, 1056 (C.D. Cal. 1998) (declining to consider evidence outside of the administrative record, on *de novo* review, because of the lack

---

[2] "Relevancy" is not the standard to determine whether to consider extrinsic evidence because "[i]n every case there will always be evidence that is not part of the administrative record but which is relevant." *Thomas v. Continental Cas. Co.*, 7 F.Supp.2d 1048, 1056 (C.D. Cal. 1998).

of a "showing of such unusual circumstances" as required by *Mongeluzo*.).

### 1. Information Regarding the Number of Dr. Howard's and MLS's Disability Reports

Plaintiff asks that Prudential state the number of disability reports received from Dr. Howard and MLS during the past five years. According to Plaintiff, this information "goes to the credibility of Dr. Howard and to the reliability of the MLS report . . ." This is not accurate. Simply knowing the number of times that Dr. Howard or MLS have been called upon by Prudential is completely meaningless. Drawing any reasonable conclusions regarding bias simply based upon the *number* of disability reports prepared by Dr. Howard or MLS would be impossible. Furthermore, even if the number of reports has some extremely minimal value in determining bias, it is impossible to reasonably conclude that the information is clearly "necessary" to conduct an "adequate" review of the administrative record. If the requested information is clearly necessary in this case, it may fairly be argued that any federal court that has reviewed a benefit decision in any ERISA matter without this information has conducted an inadequate review because biased medical professionals are always possible. Concluding that every federal court that has declined to allow discovery about a medical provider's bias in an ERISA case has conducted an inadequate review of the record is surely incorrect. See *Bursell v. General Elec. Co.*, 342 F.Supp.2d 460, 469 (D.S.C. 2004) (declining to consider discovery responses on *de novo* review of a denial of benefits, despite the contention that the "credibility of medical experts" was at-issue, because the administrative record was sufficient to make an adequate determination.).

Furthermore, reaching conclusions regarding Dr. Howard's and MLS's credibility based upon the number of reports prepared, without also ascertaining the financial and business relationship between Plaintiff and her various doctors (or Plaintiff's counsel and Plaintiff's doctors) would be inherently unfair. If information regarding the possible bias of medical professionals who contributed to the administrative record is clearly necessary to conduct an "adequate" review of the record, any evidence revealing bias by Plaintiff's doctors is equally necessary to the review.

Plaintiffs request does not seek necessary information but, instead, is an old-fashioned "fishing expedition." Depending upon the number of reports prepared by Dr. Howard and MLS in the past five years, the information <u>may</u> be entirely unnecessary to the review. Only discovery that <u>is</u> "necessary" is permitted – not discovery which may or may not even disclose relevant evidence.

### 2.     Information Regarding The "Disposition" Of Disability Reports

In addition to wanting to know the number of disability reports prepared for Prudential by Dr. Howard and MLS, Plaintiff also wants to know the "disposition" of those reports.

Describing the "disposition" of a disability report would be exceptionally difficult without producing a copy of the report and the underlying medical records which were reviewed in preparation of the report.. A medical report is generally filled with many facts, and many opinions, regarding a particular patient and characterizing the report's "disposition," without producing a copy of the report and the underlying medical records may well be impossible. How exactly does one describe the "disposition" of a disability report when the reporting doctor may be addressing a variety of questions pertaining to numerous different medical issues in the report? If the doctor concludes, for instance, that a patient is able to carry 10 pounds and must alternate between sitting and standing, what is the report's "disposition?"

A review of Dr. Howard's findings as summarized above illustrates how difficult the process of responding would be to such a vague inquiry. Dr. Howard did not opine regarding whether plaintiff was disabled, he provided a detailed medical evaluation of her records and examined the medical opinions of he doctors and her functionality as demonstrated by those records.

In order to establish "bias," the purported reason for Plaintiff requesting information regarding the "disposition" of reports written by Dr. Howard or MLS, the facts of the other claims must be thoroughly and individually considered. Simply because a doctor concludes, for example, that he or she disagrees with another physician's findings of functionality, without knowledge of the facts of each individual case, would be unjustified. Each of those other

claimants' medical conditions must be individually reviewed to determine whether the doctor reached a baseless or biased conclusion. Allowing Plaintiff to conduct discovery into medical opinions on cases other than her own would, in all fairness, require Prudential to litigate the merits of each opinion., hardly what the courts have determined to be the proper scope of discovery and judicial review in ERISA cases.

In addition, if Plaintiff is permitted to engage in this type of broad ranging and limitless discovery, Prudential should be allowed to depose Plaintiff's doctors to determine whether those doctors routinely find their patients lack functionality and serve as patient advocates against health and disability insurers. If Plaintiff's request is a guide, Prudential must be able to ask Plaintiff's doctors about their opinions regarding their other patients as well.

Because the "disposition" of a disability report, without knowledge of the underlying facts is meaningless, it is possible that Plaintiff would next attempt to bolster her "bias" argument by next requesting access to other claimant's medical records. Granting Plaintiff access to a third party's private medical information would be entirely inappropriate and a tremendous challenge under patient privacy statutes and case law.

### 3. Documents Relating To Changes To The Policy

Lastly, Plaintiff asserts that an "inconsistency" exists between language in the Plan and language in the Summary Plan Description ("SPD") regarding whether Prudential has discretion to decide claims. Plaintiff argues that the "the lack of discretionary language in the policy could have caused Prudential to expect a greater claims costs" because denial of benefits is "more likely to be reversed by a court upon de novo review." Also, according to Plaintiff, the presence of discretionary language in the SPD "could have had a chilling effect on a participant's decision whether to appeal a claim denial." Plaintiff argues that if the alleged discrepancy "exists because of underwriting considerations, the Plaintiff may not have been acting as a neutral claims administrator." Consequently, according to Plaintiff, Prudential should be required to produce "documents relating to Prudential's group disability form filings with the California Department

///

1  of Insurance, and to the history and effect on premium cost related to elimination of discretionary
2  language in the policy."

3  Respectfully, Plaintiff has engaged in verbal gymnastics in endeavoring to explain her
4  need for these documents and it is very difficult to follow the argument. Nevertheless,
5  documents dealing with alleged conflicts between the SPD's and the Plan's discussion of
6  Prudential's discretion, or changes to those provisions, are irrelevant because the parties agree
7  that the decision with regard to Plaintiff's claim is to be reviewed *de novo*. The discretionary
8  language in the Plan and the SPD would only be important if Prudential was asserting that the
9  abuse of discretion standard should be applied. This argument is not being made.

10  Plaintiff's contention that "there is nothing more relevant to making a benefit
11  determination than knowing the history of the policy on which the claim is based" is a red
12  herring because there is no ambiguity requiring clarification here. The issue before the court at
13  trial is simply whether based upon the evidence contained within the administrative record
14  Plaintiff has satisfied the definition of disability contained in the plan, period. The history of the
15  portions discussing discretion are completely irrelevant. ..

16  Also, Plaintiff's argument that Prudential "may not have been acting as a neutral claims
17  administrator" based, in some way that is not explained, because of the alleged discrepancy
18  between the discretionary language in the SPD and in the Policy is equally meritless. First, there
19  is no basis to believe that a discrepancy in the discretionary language, assuming it exists, had
20  anything to do with the claim determination. Second, the requested documents could not assist
21  Plaintiff in discovering whether the alleged discrepancy had anything to do with Prudential's
22  decision in this case anyway. And third, Prudential's bias, if any, is not at issue in a *de novo*
23  review.

24  Plaintiff has failed to present even a colorable argument that the documents she has
25  requested are clearly necessary for the Court to conduct an adequate de novo review of the
26  administrative record.

27  ///

28

-13-

## IV. CONCLUSION

Discovery in an ERISA case is only allowed under exceptional circumstances and only if the party requesting the discovery shows that the circumstances clearly establish that the information sought is necessary for the Court to conduct an adequate *de novo* review. Plaintiff seeks information regarding the number and "disposition" of disability reports prepared by MLS and Dr. Howard for Prudential during the past five years – apparently on the assumption that the information will show that Prudential relied upon biased opinions. Plaintiff also wants documents relating the history of the Plan's discretionary language.

First, the number of reports by MLS and Dr. Howard is barely relevant to show bias, let alone "necessary" to determine whether Plaintiff was entitled to benefits here. Second, disclosing a medical report's "disposition," without producing the reports and the underlying medical records in their entirety, is nearly impossible and, even if it could be done, knowing the report's "disposition" is irrelevant to establish bias by the report's author unless all of the facts supporting the "disposition" are reviewed. Such a decision would lead to tremendous burdens and the compromise of a myriad of individual's rights to keep their medical records confidential. Furthermore, the door would be opened to completely review the bias of all physician's reports contained in the administrative record. Third, because the parties both agree that the *de novo* standard of review applies, Prudential's alleged bias, whether based upon its history of obtaining outside medical reviews or the submission of its policy forms to the State pertaining to the discretionary language in the Plan or the SPD have no relevance whatsoever.

Plaintiff has not satisfied her burden of showing that exceptional circumstances clearly exist, requiring deviation from the general prohibition on discovery in an ERISA case, because an "adequate" review of the administrative record cannot otherwise occur.

///
///
///
///
///

-14-

1  Prudential respectfully requests that Plaintiff's motion be denied.

DATED: June 5, 2008

GORDON & REES LLP

By /s/ Ronald K. Alberts
　　Ronald K. Alberts
　　Tad A. Devlin
　　Attorneys for Defendants
　　THE PRUDENTIAL INSURANCE CO. OF AMERICA, Real Party in Interest, and TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM DISABILITY PLAN