

# MLS National Medical Evaluation Services, Inc.

## A MLS Group Company

July 24, 2007

Re:  Linda Burgess
     Claim Number:          10803954

### INDEPENDENT PEER REVIEW

To Whom It May Concern:

### LIST OF MEDICAL DOCUMENTATION

- Prudential Financial SOAP notes on 01/03/06, 04/24/06 and 06/09/06.
- Letter from Ms. Burgess on 03/30/06.
- Two Employee Statements on 04/05/04 and 10/04/04.
- Two letters from legal representative, Lawrence Podway, 07/11/06 and 12/12/06.
- Medical records, 06/05/89 through 03/16/06 that are handwritten, source unidentified.
- Medical records of 06/21/90 from Dr. Robert Reed, M.D.
- Letter from Dorothy Lack, Ph.D., on 08/15/91.
- Medical records of Dr. Bernard Gordon, 02/17/94.
- Medical records of Dr. Lee Schwartz, M.D., 07/14/94.
- Medical records of 06/13/95 by F and K Diagnostics, foot x-ray.
- Pap smear on 12/16/96.
- Diagnostic ultrasound, pelvic, on 10/21/97.
- 01/21/99, Surgical pathology, UCSF.
- Dr. Frank Farrell, 10/26/01, colonoscopy.
- Jacob Johnson, M.D., 07/08/04 through 07/14/04.
- DEXA scan, 04/18/03, UCSF.

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 4

There were laboratories from Lab Corp on May 24, 2005, demonstrating a normal cholesterol and LDL.

Dr. Tuffanelli had solar keratoses removed from the forehead and treated with liquid nitrogen and the lesion on the right forehead which was resected and it was benign.

Lastly, there were records from Berkley Heart Lab, Inc., on August 21, 2004, demonstrating a cholesterol of 186.

The claimant, Ms. Burgess, authored a letter on March 30, 2006, requesting an appeal of the decision to terminate her disability benefits. She noted her disability began on July 14, 2005, and continued due to symptoms of fibromyalgia, unrelieved by pain medication, and the development of peripheral neuropathy and possible tarsal tunnel syndrome.

There are Employee Statements for disability prior to this claim which include a dated request on April 5, 2004, due to bronchitis and asthma and a subsequent claim on October 4, 2004, as a Legal Secretary, in which she is noting foot pain.

Two letters from a legal representative by Lawrence Podway document that she was represented by Mr. Podway, on July 11, 2006 and a presentation of medical records on December 12, 2006.

Dr. Hershman's records have two dates of service. The initial is on May 20, 2002, in which he evaluated Ms. Burgess, who was moderately obese with generalized pain and tenderness in both feet. He noted a history of fibromyalgia at which time she was taking Darvocet, Vicodin, Prozac, Soma, Elavil and Ambien. He found nucleated keratomas beneath the fifth metatarsal bilaterally which were debrided. She had an antalgic that was guarded. He felt it may have been related to her diagnosis of fibromyalgia. Recommended palliative orthotics.

The next record is an operative note on July 14, 2005, in which bilateral hammer toes of second digit were corrected with an excisional arthroplasty and bilateral excision of neuroma in the second interspace. There were no complications evident. Tissue from the surgery found features consistent with neuroma and he completed a Supplemental Certification of Disability on October 4, 2005, noting she is experiencing difficulty in bearing weight due to pain and swelling and is also having difficulty standing for any long periods of time. He estimated return to work on November 14, 2005.

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 5

There are conflicting two documents. The first is a To Whom It May Concern letter on December 1, 2005, in which she noted that she was seen on that day and due to pain, swelling and cannot wear clothes or shoes, her disability had been extended. A letter that same day noted that she continued to heal satisfactorily from bilateral neuroma resection and hammertoe repair. Her swelling is down. She is back in shoes. We will continue to follow her conservatively as she heals.

Her first rheumatologic consultation was carried out by Dr. Albert Frietzsche. There was a report of a lumbosacral spine x-ray on October 5, 1999, demonstrating minimal degenerative change with some thinning of the facet joints on oblique views, but no evidence of deficits in the pars interarticularis and there was minimal spurring of the vertebrae.   Sacroiliac joints were normal.   There was no evidence of fractures. Interspaces were maintained. There were no soft tissue findings that were abnormal. His records have a followup visit on December 13, 1999, following an initial consultation on October 5, 1999. He noted that she had fibromyalgia for eight and half years and had been treated with a variety of medications.

At that time she complained of a loss of concentration, some neck and shoulder, thigh and calf pain and difficulty dealing with a demanding boss at work. Her physical examination noted increased muscle tension and tightness particularly in the lower back and legs which improved considerably just by doing range of motion exercises. There were no rashes. Mucous membranes were normal. She had no joint deformities. She had some crepitus in both knees and some focal discomfort in the lower back, particularly in the mid lumbar spine. Functionally he notes that she walks her dog daily and was using Vicodin, Darvocet and Ultram.

On the visit of December 13, 1999, she was more animated. She was beginning to take longer walks and she was able to carry out some nighttime social activities. He felt she met the American College of Rheumatology criteria for fibromyalgia and encouraged her to keep herself active.

Dr. David Claman, M.D., interpreted a UCSF Sleep Disorder Center polysomnography which found evidence of severe obstructive sleep apnea characterized by obstructive respiratory events and oxygen desaturation.  CPAP was applied after analysis to determine a beneficial response.

Dr. Brian Kay evaluated her initially in consultation on September 21, 2006. He noted that she had a history of fibromyalgia since 1992, finding Extra Strength Vicodin is the most helpful agent and Darvocet. She was also on Amitriptyline, Soma, Tramadol, Ambien and Cymbalta. She complained of hurting all over. He found on examination

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 6


that she was overweight, but otherwise healthy appearing and in no obvious distress. She had multiple tender points involving the neck, back and chest, but had normal joint examination with the exception of some tender points over the medial fat pads of both knees. He felt she had fibromyalgia and meeting the American College of Rheumatology criteria with a widespread musculoskeletal pain with more than 11 out of 18 tender points. He placed her on Lyrica and changed her Vicodin to Norco.

He authored a letter on November 16, 2006, in which he felt that she was unable to stand for more than three minutes at a time and had to sit with her feet elevated. He also noted that it was hard for her to concentrate on work and consequently she was still unable to work.

Dr. Pinckney initially saw her in consultation on October 17, 2006. He also noted a long history of fibromyalgia since 1992 with flare in 1994 and in July of 2005. There is notation of a documented peripheral neuropathy. He found her to be obese, in no acute distress, with multiple tender points in the axial and peripheral spine and evidence of paresthesias to light in the distal lower extremities with diminished reflexes. He was concerned about multiple physicians providing medications and recommended that she discontinue Flexeril and he changed her to Ambien Long Acting. He recommended biofeedback therapy and injection therapy which he carried out with multiple acet injections on December 13, 2006. There are no subsequent records to assess the benefit of these procedures.

Dr. Noble's, her primary physician, records date back to 1989 with laboratory studies that date back to March 28, 1989. There is a subsequent mammogram on November 21, 1990, and continued laboratory studies, some of which are not legible in terms of date or results, a venous Doppler study of the right lower extremity on February 21, 1999, which was normal and mammogram on July 30, 1992, which is normal. Multiple laboratories and EKGs through the 90s demonstrating mild to moderate elevation of cholesterol, normal chemistry panel, thyroid functions and urinalysis.

A screening mammogram on January 7, 1998, was again normal and in early 2000 there were multiple laboratories again demonstrating elevation of cholesterol repeatedly with normal chemistries and increased blood count. A urinalysis found a urinary tract infection with E. coli on September 11, 2003.

Additional screening mammogram on October 28, 2004, was normal.

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 7

A phone log report on May 20, 2005, noted some difficulty with breathing and a bronchial cough of 11 days. She was advised to hydrate and to sleep with her head elevated.

There is a Request for Medical Information Report from EDD (Employment Development Department in the state of Arizona completed by Dr. Noble on March 21, 2006. He noted her fibromyalgia and neuropathy along with depression as her diagnoses. Treatment included analgesics, exercise and antidepressants. Diagnoses were confirmed by EMG and rheumatologic consultation and the end of her disability, he felt was estimated to be on July 15, 2006. There are no office visit records contained within Dr. Noble's records.

Dr. David Cohen, on April 4, 2005, evaluated her for left knee pain. He found a full range of motion of the knee and slight crepitus and full integrity of the knee joint, no pain on palpation.

Dr. Sue's, a psychiatrist, records extend from January 23, 2006, through September 20, 2006, at which time she was on Prozac, Elavil and Ambien and the addition of Cymbalta in the interval. She was found to have to have major depressive disorder that was recurrent and severe.

Throughout multiple office visits on February 1, 2006, February 20, 2006, March 20, 2006, letters noting her disability related to major depressive disorder on April 24, 2006, and June 30, 2006, and subsequent office visits on July 21, 2006, August 25, 2006 and September 20, 2006, she notes ongoing depression and anxiety. There is no notation of any adverse side effects associated with medications. On her last visit on September 20, 2006, she denied side effects and reported there was a good response to medications. Throughout the course of her care she denied any side effects from medications, with each visit noting absence of side effects.

Dr. Carandang notes an evaluation request with a transfer of Ms. Burgess's care to him. They were requesting a rheumatologic evaluation by Dr. Kay. There are also laboratory studies at that visit with a normal chemistry panel, lipid panel and thyroid function.

Dr. Jules Steimnitz, M.D. performed a nerve conduction study of the lower extremities on March 14, 2006. He found no electrical evidence of lumbosacral radiculopathies or plexopathy. He found evidence of a peripheral neuropathy with evidence of axonal flaws distally and bilaterally. It was felt this was consistent with a neuropathy and possibly related to a congenital neuropathy due to the fact she had high arches. He felt

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 8


that it was not possible to diagnosis a tarsal tunnel in the setting of his peripheral neuropathy.

A Prescription Requisition Change is available. This is authored by Ms. Burgess to change her pharmacies in November 2005.

Dr. Davis evaluated her on March 1, 2006, at the request of Dr. Noble. He found her to have evidence of fibromyalgia and she had been unable to exercise since the previous July and that she gets exhausted for 48 hours after she exercises. She has sleep apnea. She had a negative review of system otherwise. Physical examination found evidence that she was overweight. She had an increased Q angle in both knees with mild bony deformity of the first metatarsals. She had mildly diminished range of motion involving the neck and lumbar spine with diffuse tender spots. Fibromyalgia most notably over the second intercostal space in the anterior chest, upper back, neck, scapulae, gluteus medius, trochanteric bursae and anserine bursae. Neurologically, she had symmetric hyperreflexia with 3+ reflexes in her upper and lower extremities, absent Babinski's and a positive Tinel's over the tarsal tunnel with diminished pinprick in a stocking distribution over both feet. He felt that fibromyalgia and a possible component of tarsal tunnel and peripheral neuropathy. He recommended a graduated exercise program and to reduce her narcotic analgesics.

In addition he recommended ongoing care for her depression and that she was sleeping well and was to continue her on nocturnal medications.

Laboratory studies at that time showed no significant abnormalities on evaluation for peripheral neuropathy and a repeat evaluation on July 12 of 1990 through 2006 showed no significant abnormalities on the evaluation for peripheral neuropathy and a repeat evaluation on July 12, 1990 and 2006 noted she was doing better, sleeping throughout the night, was riding an exercise bike for 30 minutes a day, but had continued moderate generalized pain particularly in her feet with constant burning. She has reduced the Tramadol to 100 mg twice a day.

Physical examination noted she had tender spots of fibromyalgia, but there was no evidence of synovitis in the upper extremities and good mobility of hips and knees. Feet revealed no evidence of active arthritis. Neurologically she had diminished sensation to pinprick in the stocking distribution of both feet. The assessment was one of ongoing fibromyalgia and peripheral neuropathy.

He then rendered an opinion that is not dated, stating that he felt that she was disabled due to lack of endurance, widespread pain and could not perform demanding cognitive

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 9


tasks on a reasonably continuous basis, had pain in her feet which made it difficult to stand for more than a few minutes and required her to elevate her feet most of the time. She had pain in her thumbs which limited her ability to type for a few minutes. She had a limited ability to concentrate and the cognitive difficulties related to fibromyalgia, depression and contributed by her medications that precluded her from working as a Legal Secretary.

CONCLUSION

**1.    Based on the documentation reviewed, does Ms. Burgess have functional impairment(s) from November 14, 2005, forward? If so, please list the functional impairment(s) and the evidence supporting your opinion.**

As of the time period of November 14, 2005, she has fibromyalgia as documented in the medical records, by three rheumatologic evaluations (Drs. Albert Srietzsche, Davis and Kay) with widespread tender points extending over the upper and lower back, anterior chest wall and knees, without evidence of significant osteoarthritis and no evidence of an inflammatory arthritis for autoimmune disorder. It is associated with an underlying sleep disorder.    She has, in the medical records, no evidence of rheumatologic impairment associated with fibromyalgia based on the absence of any loss of range of motion in peripheral joints, absence of inflammatory or significant mechanical arthritis, loss of coordination or range of motion in any of the peripheral joints, demonstrated motor weakness or atrophy.

The presence of widespread tender points does not translate, in and of itself, into any functional impairment in the absence of other corresponding findings of functional loss. Her rheumatologic evaluations extend from 1999 through September 2006 and show a constant level of widespread tender points in the absence of any other objective rheumatologic findings.

She has peripheral neuropathy involving the lower extremities, involving her feet. The diagnosis of tarsal tunnel cannot be made based on the presence of bilateral axonal degeneration involving her feet. There is no evidence of a metabolic cause for the peripheral neuropathy based on laboratory testing and it was suggested that this congenital neuropathy is associated with high arches. She has paresthesias over the lower extremities in the stocking distribution, confirmed by Dr. Davis.

He reports that she is not able to stand for more than three minutes and must elevate the feet. Elevation of feet is not a treatment for peripheral neuropathy in the absence of edema, and she was found, as of December 1, 2005, by Dr. Hershman, to be able to

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 10

wear shoes without difficulty in one note provided in the records. There is no other mention by any provider that she has had edema or is unable to wear shoes. There is no measurement of her ability to stand, rendering her inability to stand for more than three minutes self-reported, and not documented or supported by any other evidence contained in the medical records.

She has a major depressive disorder. It is beyond the scope of this reviewer to comment concerning the degree of depression and whether it is resulting in functional impairment. This will be reserved for psychiatric review.

Ms. Burgess has been diagnosed with neuropathy, which does correspond to a mild degree of functional impairment. As a result, she has limitations with her ability to stand and walk. Evidence of impairment is due to paresthesias in the distal lower extremities with diminished reflexes. This is particularly documented in the consultation of October 17, 2006 by Dr. Pinckney. Likewise, there were electrodiagnostic studies performed by Dr. Steimnitz of March 14, 2006, showing evidence of peripheral neuropathy with evidence of axonal flaws distally and bilaterally. Diminished sensation to pin prick in the stocking distribution of both feet was also documented in the evaluation by Dr. Davis of March 1, 2006. Based on the presence of the neuropathy, as described above, Ms. Burgess does have evidence of impairment of a mild degree.

**2.    Please identify appropriate restrictions and/or limitations in terms of Ms. Burgess' ability to sit, stand, walk, reach, lift, carry, perform repetitive and fine motor hand activities, etc.), based on the functional impairment(s) you have noted above. Please also note the duration of any applicable restrictions and/or limitations (e.g. temporary or permanent) and the evidence supporting your opinion if not elsewhere documented.**

Applicable to the time period of November 14, 2005 forward, from a rheumatological perspective, Ms. Burgess, on the basis of her peripheral neuropathy, is limited in standing and walking to an occasional basis. Specifically, walking would be restricted to an occasional frequency, up to 30 minutes at a time, 2 hours in cumulative total in an 8-hour time period. Standing activities would, likewise, be limited to an occasional frequency to 30 minutes at a time, 2 hours in cumulative total in an 8-hour time period. Ms. Burgess requires no physical restrictions or limitations, particularly as it relates to her ability to sit, reach, lift, carry, and/or perform repetitive and fine motor hand activities. Based upon the fixed nature of peripheral neuropathy, the limitations on standing or walking are likely to be permanent in nature. However, symptomatic improvement is achievable and reasonably expected based upon the treatment as outlined.

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 11

**3. Do the medical records support significant adverse side effects (including cognitive deficit) from any medication or combination of medication(s)? If so, please specify which medication(s) and for what time period, providing evidence of your opinion.**

The medical records from her psychiatrist, Dr. Sue, throughout 2006, clearly noted the absence of side effects related to medications. There was no mention of side effects related to cognitive impairment in the records of Dr. Davis in 2006 or by Dr. Kay in 2006. There is a notation of that she takes multiple medications which may cause cognitive impairment, but there are no references to cognitive impairment in any of the medical records available. Specifically, there is no other evidence in terms of formal neuropsychological testing or notation of any cognitive impairment from any single medication or combination of medications present throughout the available medical records from multiple practitioners.

**4. If medical records are indicating significant impairment, please comment on expected treatment, duration and prognosis (Is improvement likely?)**

The medical records support mild impairment associated with peripheral neuropathy involving the lower extremities as described above. This is a permanent impairment with treatment appropriately utilizing agents such as she has been treated with, including Cymbalta and/or Lyrica, which by report, she had improvement in 2005 and 2006 (September 21, 2005, New Patient Evaluation noting Lyrica has been "fabulous" and notation by Dr. Sue in which she has been feeling better since the addition of adding Cymbalta).

There are no significant adverse side effects associated with fibromyalgia. This is a chronic condition for which graduated exercise, which has been recommended and apparently she had adhered to 30 minutes a day of cycling, as per July 2006 records, as notation by Dr. Davis, improvement of underlying sleep disorder which also has been documented with improvement as of July 2006 in Dr. Davis' records. The use of narcotic analgesic is discouraged in the setting of fibromyalgia. Dr. Davis certainly has advised her concerning this. It is unclear if Dr. Kay has adhered to these general recommendations as per the American College of Rheumatology in his note of September 2006 in which he changed her to Norco without mention of exercise program or an attempted plan to reduce her reliance on narcotic analgesics.

Linda Burgess
Claim Number 10803954
Paul Howard, M.D.
July 24, 2007
Independent Peer Review - Page 12

**5.    Is Ms. Burgess' self-reported chronic pain supported by or consistent with diagnostic testing and physical examination findings?  Please provide detailed information supporting your opinion.**

Her pain and dysesthesias associated with peripheral neuropathy is supported by diagnostic testing-nerve conduction study by Dr. Steimnitz, March 14, 2006, and fibromyalgia tender points documented by three certified rheumatologists between 1999 and 2006.  Self reported limitations of standing and having to keep her feet elevated are not supported by the medical records as mentioned in question #1.

**6.    If you opine that Ms. Burgess is not functionally impaired, please provide a detailed explanation supporting your opinion.**

Not applicable.  Please refer to Question Number 1.

Thank you for allowing me to review this file.  If I can be of any further assistance, please do not hesitate to contact me.

I further declare under penalty of applicable law that I personally performed this evaluation and prepared this report on the date and location specified.  Furthermore, I state under penalty of applicable law that I dictated this report to the MLS transcription service and that I have reviewed the transcribed report and that this report is true and correct.

Sincerely,

Paul F. Howard, M.D.
Board Certified, American Board of Internal Medicine
  Subspecialty Board in Rheumatology
Fellow, American College of Physicians
Fellow, American College of Rheumatology
Clinical Lecturer, University of Arizona
Affiliate Assistant Professor, Division of Clinical Education, Midwestern University

PH:nmb