Exhibit 3

# SOCIAL SECURITY ADMINISTRATION

Refer To: 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

Office of Disability Adjudication and Review
Suite 200 N
1301 Clay Street
Oakland, CA 94612

Date: SEP 17 2007

Linda Claire Burgess
2441 Burlington Street
Oakland, CA 94602

## NOTICE OF DECISION – FULLY FAVORABLE

I have made the enclosed decision in your case. Please read this notice and the decision carefully.

**This Decision is Fully Favorable To You**

Another office will process the decision and send you a letter about your benefits. Your local Social Security office or another may first ask you for more information. If you do not hear anything for 60 days, contact your local office.

**The Appeals Council May Review The Decision On Its Own**

The Appeals Council may decide to review my decision even though you do not ask it to do so. To do that, the Council must mail you a notice about its review within 60 days from the date shown above. Review at the Council's own motion could make the decision less favorable or unfavorable to you.

**If You Disagree With The Decision**

If you believe my decision is not fully favorable to you, or if you disagree with it for any reason, you may file an appeal with the Appeals Council.

**How to File an Appeal**

To file an appeal you or your representative must request that the Appeals Council review the decision. You must make the request in writing. You may use our Request for Review form, HA-520, or write a letter.

You may file your request at any local Social Security office or a hearing office. You may also mail your request right to the **Appeals Council, Office of Disability Adjudication and Review, 5107 Leesburg Pike, Falls Church, VA 22041-3255**. Please put the Social Security number shown above on any appeal you file.

See Next Page

**Time to File an Appeal**

To file an appeal, you must file your request for review **within 60 days** from the date you get this notice.

The Appeals Council assumes you got the notice 5 days after the date shown above unless you show you did not get it within the 5-day period. The Council will dismiss a late request unless you show you had a good reason for not filing it on time.

**Time to Submit New Evidence**

You should submit any new evidence you wish to the Appeals Council to consider **with** your request for review.

**How an Appeal Works**

Our regulations state the rules the Appeals Council applies to decide when and how to review a case. These rules appear in the Code of Federal Regulations, Title 20, Chapter III, Part 404 (Subpart J).

If you file an appeal, the Council will consider all of my decision, even the parts with which you agree. The Council may review your case for any reason. It **will** review your case if one of the reasons for review listed in our regulation exists. Section 404.970 of the regulation lists these reasons.

Requesting review places the entire record of your case before the Council. Review can make any part of my decision more or less favorable or unfavorable to you.

On review, the Council may itself consider the issues and decide your case. The Council may also send it back to an Administrative Law Judge for a new decision.

**If No Appeal and No Appeals Council Review**

If you do not appeal and the Council does not review my decision on its own motion, you will not have a right to court review. My decision will be a final decision that can be changed only under special rules.

See Next Page

**If You Have Any Questions**

If you have any questions, you may call, write or visit any Social Security office. If you visit an office, please bring this notice and decision with you. The telephone number of the local office that serves your area is (510)273-6588. Its address is Social Security, 1111 Jackson St., Oakland, CA 94607.



Major Williams, Jr.
Administrative Law Judge

cc:   Pamela Vincent
      1300 Clay Street
      Suite 600
      Oakland, CA 94612

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

## ORDER

| **IN THE CASE OF** | **CLAIM FOR** |
|---|---|
| | Period of Disability and Disability Insurance Benefits |
| Linda Claire Burgess | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

I approve the fee agreement between the claimant and her representative subject to the condition that the claim results in past-due benefits.

My determination is limited to whether the fee agreement meets the statutory conditions for approval and is not otherwise excepted. I neither approve nor disapprove any other aspect of the agreement.

**HOW TO ASK US TO REVIEW THE FEE AGREEMENT DETERMINATION**

You or your representative may ask us to review the determination on the fee agreement. If you decide to ask us for a review, write us within 15 days from the day you get this order. Tell us that you disagree and give your reasons.
Send your request to this address:

> G. Stephen Wright
> Regional Chief Administrative Law Judge
> SSA ODAR Regional Ofc
> 5th Floor
> 555 Battery St
> San Francisco, CA 94111

Your representative also has 15 days to write us if he or she does not agree with the determination on the fee agreement.

You should include the social security number(s) shown on this order on any papers that you send us.

Major Williams, Jr.
Administrative Law Judge

SEP 17 2007
Date

**SOCIAL SECURITY ADMINISTRATION**
**Office of Disability Adjudication and Review**

## DECISION

| | |
|---|---|
| **IN THE CASE OF** | **CLAIM FOR** |
| | Period of Disability and Disability Insurance Benefits |
| Linda Claire Burgess | |
| (Claimant) | |
| | 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 |
| (Wage Earner) | (Social Security Number) |

### JURISDICTION AND PROCEDURAL HISTORY

On March 8, 2006, the claimant filed an application for a period of disability and disability insurance benefits, alleging disability beginning July 15, 2005. This claim was denied and is now before me on a timely written request for hearing filed on February 7, 2007 (20 CFR 404.929 et seq.). The evidence of record supports a fully favorable decision; therefore no hearing has been held (20 CFR 404.948(a)). The claimant is represented by Pamela Vincent, an attorney.

### ISSUES

The issue is whether the claimant is disabled under sections 216(i) and 223(d) of the Social Security Act. Disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment or combination of impairments that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.

There is an additional issue whether the insured status requirements of sections 216(i) and 223 of the Social Security Act are met. The claimant's earnings record shows that the claimant has acquired sufficient quarters of coverage to remain insured through December 31, 2010. Thus, the claimant must establish disability on or before that date in order to be entitled to a period of disability and disability insurance benefits.

After careful review of the entire record, I find that the claimant has been disabled from July 15, 2005 through the date of this decision. I also find that the insured status requirements of the Social Security Act were met as of the date disability is established.

### APPLICABLE LAW

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled (20 CFR 404.1520(a)). The steps are followed in order. If it is determined that the

See Next Page

claimant is or is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

At step one, I must determine whether the claimant is engaging in substantial gainful activity (20 CFR 404.1520(b)). Substantial gainful activity (SGA) is defined as work activity that is both substantial and gainful. "Substantial work activity" is work activity that involves doing significant physical or mental activities (20 CFR 404.1572(a)). "Gainful work activity" is work that is usually done for pay or profit, whether or not a profit is realized (20 CFR 404.1572(b)). Generally, if an individual has earnings from employment or self-employment above a specific level set out in the regulations, it is presumed that she has demonstrated the ability to engage in SGA (20 CFR 404.1574 and 404.1575).

If an individual engages in SGA, she is not disabled regardless of how severe her physical or mental impairments are and regardless of her age, education, and work experience. If the individual is not engaging in SGA, the analysis proceeds to the second step.

At step two, I must determine whether the claimant has a medically determinable impairment that is "severe" or a combination of impairments that is "severe" (20 CFR 404.1520(c)). An impairment or combination of impairments is "severe" within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. An impairment or combination of impairments is "not severe" when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work (20 CFR 404.1521; Social Security Rulings (SSRs) 85-28, 96-3p, and 96-4p).

If the claimant does not have a severe medically determinable impairment or combination of impairments, she is not disabled. If the claimant has a severe impairment or combination of impairments, the analysis proceeds to the third step.

At step three, I must determine whether the claimant's impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526). If the claimant's impairment or combination of impairments meets or medically equals the criteria of a listing and meets the duration requirement (20 CFR 404.1509), the claimant is disabled. If it does not, the analysis proceeds to the next step.

Before considering step four of the sequential evaluation process, I must first determine the claimant's residual functional capacity (RFC) (20 CFR 404.1520(e)). An individual's RFC is her ability to do physical and mental work activities on a sustained basis despite limitations from her impairments. In making this finding, I must consider all of the claimant's impairments, including impairments that are not severe (20 CFR 404.1520(e) and 404.1545; SSR 96-8p).

Next, I must determine at step four whether the claimant has the RFC to perform the requirements of her past relevant work (20 CFR 404.1520(f)). The term past relevant work means work performed (either as the claimant actually performed it or as it is generally performed in the national economy) within the last 15 years or 15 years prior to the date that

disability must be established. In addition, the work must have lasted long enough for the claimant to learn to do the job and have been SGA (20 CFR 404.1560(b) and 404.1565).

If the claimant has the RFC to do her past relevant work, the claimant is not disabled. If the claimant is unable to do any past relevant work or does not have any past relevant work, the analysis proceeds to the fifth and last step.

At the last step of the sequential evaluation process (20 CFR 404.1520(g)), I must determine whether the claimant is able to do any other work considering her RFC, age, education, and work experience. If the claimant is able to do other work, she is not disabled. If the claimant is not able to do other work and meets the duration requirement, she is disabled. Although the claimant generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Social Security Administration. In order to support a finding that an individual is not disabled at this step, the Social Security Administration is responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do, given the RFC, age, education, and work experience (20 CFR 404.1512(g) and 404.1560(c)).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

After careful consideration of the entire record, I make the following findings:

**1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.**

**2. The claimant has not engaged in substantial gainful activity since July 15, 2005, the alleged onset date (20 CFR 404.1520(b) & 404.1571 *et seq.*).**

**3. The claimant has the following severe impairments: fibromyalgia with chronic generalized pain and fatigue; morbid obesity; sleep apnea, with daytime lethargy and somnolence; residual hammertoes and neuromas of the bilateral feet, resulting in generalized pain with ambulation; arthritis of the bilateral knee; peripheral neuropathy effecting most significantly the lower extremities with associated pain, paresthesias, tingling, and numbness; and chronic depression (20 CFR 404.1520(c)).**

The above impairments cause significant limitation in the claimant's ability to perform basic physical and mental work related activities.

**4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d)).**

In reaching this conclusion, I paid particular attention to the Listing sections relating to orthopedic, neurological, pulmonary, and mental disorders and dysfunction.

5. **After careful consideration of the entire record, I find that the claimant's combination of impairments precludes her from performing any type of work activity, at any exertional level, on a consistent, predictable, regular, reliable, and sustained basis.**

In making this finding, I considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. I have also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

There is no basic conflict in the medical record which indicates that this unfortunate claimant has been living a rather marginalized existence secondary to the effects of multiple significant medical disorders, as set forth above. She has generalized pain, chronic fatigue, lethargy, and daytime somnolence, and painful feet which preclude more than minimal ambulation. She has been treated aggressively since onset, including having undergone surgery on her feet. Despite such treatment, she has remained markedly symptomatic with continuing debilitating pain and fatigue.

All in all, I find that the claimant has not experienced sufficient improvement in her level of symptomatology, for any significant period of time, as to allow her to return to the performance of substantial gainful activity.

Based upon my review of the record, I find that the evidence supports the conclusion that the claimant retains the RFC to perform no more than a narrowed range of sedentary work activity. On a physical exertional level, she is limited to sedentary work secondary to continuing pain in her bilateral feet due to residual hammertoes and neuromas, peripheral neuropathy in the lower extremities and feet resulting in pain, tingling, and numbness, with her ability to stand and ambulate being further restricted due to morbid obesity.

In addition, the claimant's ability to perform even sedentary work is further compromised due to additional nonexertional functional limitations secondary to generalized pain, weakness, and fatigue resulting from fibromyalgia, daytime lethargy and somnolence resulting from sleep apnea, and loss of energy and the ability to maintain concentration secondary to depression. These factors result in significant deficits in concentration, attention span, and the ability to focus on a task, significantly eroding the sedentary work base.

In essence, the claimant's continued uncontrolled symptomatology precludes her from sustaining a normal 8-hour workday and five-day workweek in the competitive marketplace on a "regular and continuing basis", the regulatory standard. See Social Security Administration ruling 96-8p. Her vocational workbase has been totally eroded.

Relative to her mental status in particular, the claimant has the following degree of limitation in the broad areas of functioning set out in the disability regulations for evaluating mental disorders and in the mental disorders Listings in 20 CFR, Part 404, Subpart P, Appendix 1: mild restriction of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace; and no episodes of deterioration in

See Next Page

symptomatology or decompensation in work or work-like settings. The claimant's mental impairment also does not satisfy the paragraph "C" criteria of the applicable mental disorder Listing, 12.04.

The RFC set forth above is substantiated by a consistent objectively supported medical record. Clinic and progress notes indicate ongoing treatment for a fibromyalgia syndrome, significant sleep apnea, and chronic depression.

Secondary to complaints of daytime lethargy and somnolence, studies were performed which were indicative of moderate obstructive sleep apnea. In an attempt to improve her sleep apnea symptoms, her tonsils were removed in July 2004. It was indicated that the claimant had been using a C-PAP device with limited results relative to improvement in sleeping.

In May 2005, the claimant complained of developing pain and tingling in her feet, consistent with peripheral neuropathy. It was stated that her medical status was complicated by fibromyalgia which was exacerbated by morbid obesity. Left knee arthritis was also indicated.

She has also been plagued by bilateral hammertoe deformities, with associated neuromas, which resulted in significant pain and subsequent reductions in her ability to ambulate. Multiple cortisone injections were only partially successful and she underwent corrective surgery on July 14, 2005 on the second digit of the left foot, on several digits of the right foot, with excision of neuromas on both feet.

Secondary to continuing complaints of tingling, numbness, and pain in her lower extremities, an EMG study was performed in March 2006 and was indicative of peripheral neuropathy. It was concluded that this would be a cause for her foot pain as well as her fatigue. It was noted that the claimant did not have diabetes and the exact etiology of her symptoms was not entirely clear.

Dr. Davis stated in March 2006 that the claimant's chronic pain was most consistent with fibromyalgia, with peripheral neuropathy contributing to her foot pain. Generalized foot pain from her hammertoe deformities also continued despite surgery, with her podiatrist opining that she had a component of tarsal tunnel syndrome. The claimant stated that after exercise, she is exhausted for 48 hours. It was stated that the claimant's symptoms were exacerbated by obesity which had resulted in bilateral chondromalacia patellae relating to her knees.

On top of her multiple physical maladies, the claimant also remained under treatment for functional loss secondary to ongoing depression.

In April 2006, the claimant underwent a further evaluation by podiatrist Dr. Bernard secondary to continuing foot pain. On examination, Dr. Bernard found flexion contractures of several joints, generalized tenderness to palpation, and decreased sensation of the second and third toes bilaterally. A positive Tinel's sign was indicated. A nerve conduction study was obtained, as noted above, which was indicative of peripheral neuropathy. There was evidence of residual hammertoes. "It is my opinion that Ms. Burgess's physical foot problems, peripheral neuropathy with residual hammertoe, right, will limit physical activity such as standing and walking along with lifting and carrying."

The opinion and conclusions of the claimant's treating physician, as well as other credible and well qualified examining sources, if well supported by the record, are always entitled to significant probative weight. If such opinion and conclusions of the treating source are well supported and not inconsistent with other credible and well documented medical sources, then controlling probative weight must be given to the treating source. See 20 CFR 404.1527 and 416.927 and SSR 96-2p.

In June 2006, the claimant underwent a psychological consultative evaluation performed by DDS examiner Dr. Martin. Claimant stated that her major problems were depression, fibromyalgia, and peripheral neuropathy; she walked with a slight limp. The claimant indicated that her medical problems had worsened her depression, which had been long-standing and persistent despite comprehensive mental-health treatment. She noted:
- Depression (about as depressed as she had ever had been);
- sleep disturbance;
- poor motivation;
- low energy;
- social withdrawal;
- irritability; and frustration; and
- that she was under psychiatric treatment.

Dr. Martin diagnosed a pain disorder and a depressive disorder not otherwise specified (NOS), with a relatively high Global Assessment of Functioning (GAF) score of 64. Despite the claimant's subjective presentation and his findings, Dr. Martin concluded that the claimant would only be mildly impaired as to her ability to withstand the stress of a routine workday.

I note that Dr. Martin only examined the claimant on one occasion and his conclusions are based on such limited contact. Dr. Martin's conclusions are contrary to those of Dr. Harris, the claimant's treating psychiatrist at Pathways to Wellness. Dr. Martin's opinions as to the claimant's employability on a day-to-day basis are also in conflict with the treating sources of record. For those reasons, I find that his conclusions are entitled to limited probative weight.

Dr. Harris had treated the claimant for a number of months and his conclusions are based on his longitudinal perspective. He related that the claimant continued with bilateral leg pain with the feeling that her legs were "heavy". He stated that the claimant's symptoms had been somewhat ameliorated with medication but related that she remained with social withdrawal, isolating behavior, poor sleep with frequent awakenings, hyperphagia, anxiety, thoughts of death and hopelessness: "Why should I go on." Dr. Harris diagnosed major depressive disorder, recurrent, severe with a Global Assessment of Functioning of 55.

In January 2006, the claimant was found to have marked restriction of activities of daily living, marked difficulty maintaining social relationships, moderate difficulties maintaining concentration, persistence, and pace, and mild episodes of decompensation or deterioration in work or work like settings.

By June 2006, it was indicated that the claimant's mental status had shown significant stabilization with the use of antidepressants. Regular treatment continued.

See Next Page

In September 2006, Dr. Kaye confirmed the diagnosis of fibromyalgia, stating that the claimant's symptomatology was consistent with the American College of Rheumatology definition for fibromyalgia. The claimant stated that she hurt all over her body, with the symptoms having progressively worsened over the years.

In October 2006, the claimant was evaluated by Dr. Pinckney for her chronic pain. She described her generalized discomfort and fatigue secondary to fibromyalgia as well as her loss of sensation, numbness, and tingling in the feet. She noted that her pain is constant and worse with prolonged activities such as walking, sitting, and standing. Examination revealed multiple tender points. There was a constant sensation of paresthesias to light touch in the distal extremities and reflexes were depressed symmetrically at the patella and Achilles' tendon. He recommended the possibility of biofeedback treatment as part of a comprehensive pain management approach. He also felt that she might be a candidate for injections.

In November 2006, Dr. Wrubel conducted a neurological evaluation. The claimant noted that despite all treatment modalities, she continued to have bilateral foot pain, increasing with any walking. Examination revealed loss of sensation and vibration perception in the feet. Dr. Wrubel stated that there did not appear to be any reversible cause for her neuropathy and he recommended management of symptoms.

The remainder of the medical record is cumulative and consistent with the above noted medical findings and conclusions. It does not reveal any significant improvement in the claimant's overall medical status.

In early 2007, the claimant stated that her medications had been helpful and that she was "willing to take more risks with walking", including walking her dogs around the block. She also noted some generalized improvement in her overall level of pain. She also stated that she was having increased levels of confusion secondary to increased levels of medication, with side effects, combined with her fatigue, somnolence, and ongoing generalized pain.

After considering the evidence of record, in which there is no significant conflict, I find that the claimant's medically determinable impairments could reasonably be expected to produce the alleged symptoms, and that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are fully credible.

The conclusion of prior DDS physicians and adjudicators at the reconsideration level that the claimant remained capable of sustaining the performance of sedentary work activity with no significant mental restrictions is simply not supported by the preponderance of the credible evidence of record, including the ongoing consistent, probative, and objectively supported reports from the claimant's treating and evaluating medical sources.

The claimant's treating medical sources, over time, have developed a longitudinal perspective which allows them to most accurately predict the claimant's ability to and level of function on a day-to-day basis, especially as it concerns her ability to perform a normal eight-hour workday and five-day workweek in the competitive marketplace.

Relative to the ultimate functional conclusions of State Agency and DDS, I find that the claimant's consistent, highly persuasive, and objectively supported subjective complaints, the combined effect of her impairments, as well as her need for continued frequent and aggressive

medical treatment, were not given appropriate probative weight by DDS, State Agency, or Dr. Martin. See 20 CFR 404.1529 and 416.929 and SSR 96-7p. I do not find the functional assessment of State Agency and DDS to be currently supported by a preponderance of the credible evidence of record.

6. **The claimant is unable to perform any past relevant work (20 CFR 404.1565).**

The claimant's past relevant work as a legal secretary required a light level of exertion. As she is now restricted to a markedly narrowed range of sedentary work, I find that she is unable to perform past relevant work.

7. **The claimant was an individual closely approaching advanced age on the established disability onset date. As of her attainment of age 55 on August 13, 2006, she became of advanced age (20 CFR 404.1563).**

8. **The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).**

9. **Given her current marginal RFC, I find that the claimant's acquired job skills do not transfer to other occupations existing in significant numbers in the economy (20 CFR 404.1568).**

10. **Considering the claimant's age, education, work experience, and RFC, there are no jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1560(c) and 404.1566).**

In determining whether a successful adjustment to other work can be made, I must consider the claimant's RFC, age, education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2. If the claimant can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either "disabled" or "not disabled" depending upon the claimant's specific vocational profile (SSR 83-11).

When the claimant cannot perform substantially all of the exertional demands of work at a given level of exertion and/or has nonexertional limitations, the medical-vocational rules are used as a framework for decision-making unless there is a rule that directs a conclusion of "disabled" without considering the additional exertional and/or nonexertional limitations (SSRs 83-12 and 83-14). If the claimant has solely nonexertional limitations, section 204.00 in the Medical-Vocational Guidelines provides a framework for decision-making (SSR 85-15).

As the claimant's physical exertional functional capacity to perform even the full range of sedentary work has been markedly reduced by additional nonexertional functional limitations secondary to chronic pain, weakness, and fatigue that further narrow the range of work she can perform, a finding of "disabled" may therefore be reached within the framework of Medical-Vocational Grid rule 201.14 (from date of onset to the attainment of age 55 on August 13, 2006) and Grid rule 201.06 (from the attainment of advanced age on August 13, 2006 and continuing

See Next Page

thereafter). Further guidance is provided by section 201.00 (h) of the Grid preamble and Social Security Administration rulings 96-8p and 96-9p. As these Grid rules would direct a conclusion of "disabled" even if the claimant were found capable of performing a full range of sedentary work, a similar conclusion obviously results given the claimant's RFC for a significantly reduced range of sedentary work activity.

**11. The claimant has been under a disability, as defined in the Social Security Act, from July 15, 2005 through the date of this decision (20 CFR 404.1520(g)).**

## DECISION

Based on the Title II application for a period of disability and disability insurance benefits filed on March 8, 2006, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on July 15, 2005.

Major Williams, Jr.
Administrative Law Judge

Date   SEP 17 2007

thereafter). Further guidance is provided by section 201.00 (h) of the Grid preamble and Social Security Administration rulings 96-8p and 96-9p. As these Grid rules would direct a conclusion of "disabled" even if the claimant were found capable of performing a full range of sedentary work, a similar conclusion obviously results given the claimant's RFC for a significantly reduced range of sedentary work activity.

**11. The claimant has been under a disability, as defined in the Social Security Act, from July 15, 2005 through the date of this decision (20 CFR 404.1520(g)).**

## DECISION

Based on the Title II application for a period of disability and disability insurance benefits filed on March 8, 2006, the claimant has been disabled under sections 216(i) and 223(d) of the Social Security Act beginning on July 15, 2005.

Major Williams, Jr.
Administrative Law Judge

Date  SEP 17 2007