1   RONALD K. ALBERTS (SBN 100017)
    TAD A. DEVLIN (SBN 190355)
2   SHANNON L. VICTOR (SBN 221889)
    GORDON & REES LLP
3   275 Battery Street, Suite 2000
    San Francisco, CA  94111
4   Telephone: (415) 986-5900
    Facsimile:  (415) 986-8054
5   ralberts@gordonrees.com
    tdevlin@gordonrees.com
6   svictor@gordonrees.com

7   Attorneys for Defendants
    THE PRUDENTIAL INSURANCE CO. OF
8   AMERICA, Real Party in Interest, and
    TOWNSEND AND TOWNSEND AND CREW
9   LLP LONG TERM DISABILITY PLAN

10              UNITED STATES DISTRICT COURT

11          FOR THE NORTHERN DISTRICT OF CALIFORNIA

12

13  LINDA BURGESS,                    )   CASE NO. C07-05310 (JSW) (ADR)
                                      )
14          Plaintiff,                )   **MEMORANDUM OF POINTS AND**
        vs.                           )   **AUTHORITIES IN SUPPORT OF**
15                                    )   **DEFENDANTS' CROSS-MOTION FOR**
    TOWNSEND AND TOWNSEND AND         )   **SUMMARY JUDGMENT AND**
16  CREW LLP LONG TERM DISABILITY     )   **OPPOSITION TO PLAINTIFF'S**
    PLAN                              )   **MOTION FOR SUMMARY**
17          Defendant,                )   **JUDGMENT**
                                      )
18  _____  )
                                      )
19  THE PRUDENTIAL INSURANCE          )
    COMPANY OF AMERICA                )
20                                    )
            Real Party in Interest.   )
21  _____  )

22

23

24

25

26

27

28

PRU/1047952/5892875v.1

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

# TABLE OF CONTENTS

**Page No.**

I.   INTRODUCTION .................................................................................................1

II.  STATEMENT OF FACTS ....................................................................................2

    A.   Prudential's In-House Medical & Disability Professionals Reviewed Plaintiff's Claim .........................................................................................3

    B.   Burgess' First Appeal Of Prudential's Termination Of LTD Benefits ..................4

    C.   A Vocational Rehabilitation Specialist Reviewed Plaintiff's Job Duties ...............4

    D.   Prudential Requested Plaintiff's Medical Records ......................................4

    E.   Dr. Joyce Bachman Reviewed Plaintiff's Claim .......................................4

    F.   Plaintiff's Claim Was Reviewed By Josephine Malysz, A Psychiatric Nurse .....................................................................................................5

    G.   Prudential Denied Burgess' First Appeal ..............................................5

    H.   Plaintiff's Physician, Dr. Pinckney, Recommended Plaintiff Decrease Her Medications ...........................................................................................5

    I.   Burgess' Second Appeal .......................................................................6

    J.   Prudential Requested Plaintiff's Medical Records ......................................6

    K.   An Independent Medical Review Was Performed By Dr. Schroeder, Board Certified In Psychiatry And He Concluded Plaintiff Was Not Disabled.................7

    L.   An Independent Medical Review Was Performed By Dr. Howard, Board Certified In Rheumatology And Internal Medicine .....................................7

    M.   Prudential Denied Burgess' Second Appeal ............................................9

    N.   The Governing Plan Language ..............................................................9

III. PRUDENTIAL THOROUGHLY REVIEWED PLAINTIFF'S CLAIMS AND THE MEDICAL INFORMATION PROVIDED SIMPLY FAILS TO MEET THE PLAN'S REQUIREMENTS FOR LTD BENEFITS ...................................................10

    A.   Prudential Performed A Thorough, Exhaustive, And Detailed Review Of Plaintiff's Claims ...............................................................................10

    B.   Plaintiff's Medical Information Simply Fails To Support A Finding That She Was Disabled Under The Townsend Plan .......................................11

    1.   Plaintiff Has The Burden Of Establishing Disability Under The Plan .................11

    2.   Plaintiff's Claims Of Depression Are Completely Contradicted By The Evidence In The Record.........................................................................12

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

i

3.  The Evidence In The Record Fails To Show Plaintiff Was Disabled From Her Regular Occupation Due To Fibromyalgia........................12

4.  Plaintiff's Peripheral Neuropathy Did Not Cause Significant Impairment............13

5.  The Evidence Indicates Plaintiff Does Not Want To Work And Takes An Excessive Amount Of Medication .......................................................................13

IV.  THE EVIDENCE IN THE RECORD CONTRADICTS PLAINTIFF'S CLAIMS OF DISABILITY ........................................................................................................14

A.  Plaintiff Has The Burden Of Establishing That She Is Disabled...........................14

B.  Plaintiff Relies On Irrelevant, Outdated Information To Support Her Claim.......................................................................................................................15

C.  Plaintiff's Claim Of Exhaustion After Exercise Is Contradicted And Fails To Establish Disability From Her Regular, Sedentary Occupation......................15

D.  Plaintiff's Peripheral Neuropathy Causes Only Mild Impairment ........................15

E.  Plaintiff's Claims That Her Medications Caused Her To Suffer From Cognitive Impairments Are Completely Unfounded And Contradicted By The Evidence In The Record. .................................................................................16

F.  Plaintiff's Claim That Her Personal Statement Is Missing From The Record Is Inappropriate At This Stage Of Litigation Because She Was Required To Notify Defendants If She Believed The Record Was Incomplete By March 19, 2008 .......................................................................17

V.  PLAINTIFF'S CLAIMS MUST FAIL BECAUSE THEY ARE IRRELEVANT, CONTRADICTED, OR BASED ON FALSE ASSUMPTIONS ........................................19

A.  Plaintiff's Attempts To Discredit Dr. Howard's Report Are Without Merit.........19

B.  Plaintiff's Claim That Dr. Howard's Report Is Not A "Peer Review" Or A "Consultation" Is Inconsequential And Unfounded ..............................................19

C.  Plaintiff's Claim That Dr. Howard "Conclusively Credits" Dr. Sue's Note is False ....................................................................................................................19

D.  Plaintiff's Argument That Dr. Howard Disregards Her Claims Is Contradicted And Unsupported ............................................................................20

E.  Plaintiff Mischaracterizes Prudential's And Dr. Howard's Analyses Of Her Medical Records When She Erroneously Claims That She Is Required To Prove Her Disability By Means Of Nonexistent Objective Findings..............20

VI.  ERISA CLAIM ADMINISTRATORS ARE NOT BOUND BY SOCIAL SECURITY ADMINISTRATION DISABILITY DETERMINATIONS.........................22

VII.  THE ONLY ISSUE BEFORE THE COURT IS WHETHER PLAINTIFF WAS DISABLED FROM HER REGULAR OCCUPATION......................................................23

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

ii

1

VIII.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
GRANTED AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT
SHOULD BE SUMMARILY DENIED ........................................................................ 25

2

3

4

5

6

7

8

9

10

11

12

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MPA IN SUPPORT OF CROSS-MOTION & OPP TO MSJ          Case No. C07-05310 (JSW) (ADR)

# TABLE OF AUTHORITIES

Page No.

**Cases**

*Black & Decker Disability Plan v. Nord*
538 U.S. 822 (2003) ........................................................................... 22

*Coleman-Lea v. Metropolitan Life Ins. Co.,*
2006 WL 3591229 (N.D. Cal.) ........................................................ 22

*Madden v. ITT Long Term Disability Plan*
914 F.2d 1279 (1990) ................................................................... 22, 23

*Pakovich v. Broadspire Services*
_F.3d_, Case No. 07-1520, 2008 WL 2841140 ............................... 24

*Saffon v. Wells Fargo & Company Long Term Disability Plan*
522 F.3d 863 (9th Cir., 2008) ......................................................... 22

*Shane v. Albertsons' Inc. Employee's Disability Plan*
381 F.Supp 2d 1196 (2005) ............................................................ 22

*Tremain v. Bell Indus., Inc.*
196 F.3d 970 (9th Cir. 1999) ............................................................ 1

*Vizcaino v. Microsoft Corp.*
120 F.3d 1006 (9th Cir. 1997) ........................................................ 24

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

2    Defendants, THE PRUDENTIAL INSURANCE CO. OF AMERICA, Real Party in Interest,

3    ("Prudential") and TOWNSEND AND TOWNSEND AND CREW LLP LONG TERM

4    DISABILITY PLAN (the "Plan" or "Townsend Plan") (collectively, "Defendants") hereby

5    submit their Memorandum of Points and Authorities in Support of Defendants' Cross-Motion for

6    Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment.

7                    **MEMORANDUM OF POINTS AND AUTHORITIES**

8    **I.**    **INTRODUCTION**

9        Prudential's Cross-Motion for Summary Judgment should be granted and Plaintiff's

10   Motion for Summary Judgment should be summarily denied.  Plaintiff alleges claims for long

11   term disability ("LTD") benefits under the Employee Retirement Income Security Act

12   ("ERISA").  The sole issue in this action is the propriety of Prudential's decision to deny

13   Plaintiff's claims for long term disability ("LTD") benefits under the 'regular occupation'

14   definition of disability contained in the Townsend Plan.  The Parties stipulate that the *de novo*

15   standard of review applies to this case.  Under the *do novo* standard of review, the normal

16   summary judgment standard applies, and the District Court may grant summary judgment only if

17   there are no genuine issues of material fact in dispute.  *Tremain v. Bell Indus., Inc.,* 196 F.3d

18   970, 978 (9th Cir. 1999).

19       Plaintiff primarily alleges that pain caused by her fibromyalgia precludes her from

20   working at her regular, or any, occupation.  However, Prudential reviewed Plaintiff's medical

21   records and obtained the opinions of two independent, board certified physicians, both of whom

22   concluded that the evidence in the record did not support a finding that Plaintiff was disabled

23   from her regular occupation.  Prudential weighed and reviewed the available evidence.  Its

24   decision to deny benefits was consistent with the opinions of its outside reviewing physicians

25   and reasonably grounded upon the evidence in the record.  Accordingly, Prudential's motion for

26   summary judgment should be granted.

27       Further, even if the Court finds that there are disputed issues of material fact; Plaintiff's

28   Motion for Summary Judgment should be denied because she cannot establish that there is no

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1

1   disputed issue of material fact regarding her ability to meet Plan criteria for LTD benefits.

2   **II.    STATEMENT OF FACTS**

3       Plaintiff Linda Burgess ("Plaintiff" or "Burgess") is a 56 year old woman who claims she

4   became disabled on July 14, 2005, while employed by Townsend & Townsend & Crew

5   ("Townsend") as a legal secretary.  Her job duties included processing litigation pleadings,

6   maintaining a litigation calendar, preparing files, and reviewing and routing incoming

7   correspondence and pleadings.  (PRUB00488)

8       On July 14, 2005, Plaintiff underwent surgery to correct hammertoes and neuroma in her

9   feet.  (PRUB00510-00514)  She subsequently filed a claim for long term disability benefits,

10  indicating she had pain in her feet, had been diagnosed with hammertoes and neuroma, and had

11  undergone surgery for these conditions.  (PRUB00510-00514, PRUB00517)

12      On October 14, 2005, Plaintiff's physician, Donald E. Hershman, D.P.M. ("Dr.

13  Hershman"), indicated that Plaintiff was unable to stand, walk, or wear close toed shoes.  He

14  noted that Plaintiff could return to work without restrictions on November 14, 2005.

15  (PRUB00510-00514)

16      On October 25, 2005, Prudential approved Plaintiff's request for LTD benefits from July

17  14, 2005 through November 13, 2005.  Since the Plan contains a 90 day elimination period the

18  payment of LTD benefits commenced on October 13, 2005 (90 days after the LTD certification

19  effective date of July 14, 2005).  (PRUB00633)

20      On December 1, 2005, Dr. Hershman stated in an office note that, "Ms. Burgess

21  continues to heal satisfactorily from bilateral neuroma resection and hammer toe repair.  Her

22  swelling is down.  She is back in shoes." (PRUB00492)  Yet, on that same date he prepared a

23  disability note stating Plaintiff continued to experience pain and swelling and could not wear

24  closed toe shoes.  (PRUB00491)

25      On December 2, 2005, Prudential advised Plaintiff that her claim had "termed" and that

26  she would need to appeal to continue to receive LTD benefits.  (PRUB00561)

27      On December 5, 2005, Prudential contacted Plaintiff, who stated that her feet were very

28  swollen and that she was unable to walk for long periods of time.  Plaintiff stated she could not

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

2

1  work because of swelling in her feet and a decreased tolerance for activity, but that she was

2  definitely progressing and returning to work was her only plan. (PRUB00526-00528)

3      On December 28, 2005, Plaintiff called Prudential and stated Townsend gave her job

4  away and that she was unable to work because of pain. She stated she had fibromyalgia and one

5  of the symptoms of this condition was a "heightened sensitivity to pain." Plaintiff was

6  reportedly taking Vicodin, Darvacet, and Ultram on a daily basis. Her medication was

7  prescribed by her primary care doctor, Alan Noble, M.D. ("Dr. Noble"). (PRUB00527)

8  **A.    Prudential's In-House Medical & Disability Professionals Reviewed
       Plaintiff's Claim**

9

10     On January 3, 2006, Plaintiff's medical records were reviewed by Prudential employees

11  Linda Campos, RN, Laurie Bjorklund, DC, and Diana Turner, a vocational rehabilitation

12  counselor ("VRC"). They noted that Dr. Hershman wrote two different notes on December 1,

13  2005. He wrote a *disability* note mentioning pain and swelling and the inability to wear shoes

14  and an *office* note stating "back in shoes," and noting decreased swelling and progress with the

15  healing process. Prudential noted that a 10-12 week recovery period was medically reasonable.

16  However, because of Burgess' height and weight, an additional two to four weeks was necessary

17  for the healing process. Prudential concluded that a return to work date of November 14, 2005

18  was reasonable. However, extending disability benefits beyond that date was not supported by

19  the medical records in Plaintiff's file. Prudential noted that Burgess' position as a legal secretary

20  was "sedentary" and most likely involved frequent use of her upper extremities. (PRUB00529)

21     On January 10, 2006, Prudential wrote to Burgess and advised that she did not meet the

22  definition of total disability under the Townsend Plan after November 14, 2005. (PRUB00610-

23  00612)

24     On March 1, 2006, James Davis, M.D., ("Dr. Davis") evaluated Burgess at Dr. Noble's

25  request. Dr. Davis noted Burgess had a 20-year history of fibromyalgia. Dr. Davis stated, "her

26  clinical picture is most consistent with fibromyalgia and at the present time she has possibly a

27  component of a tarsal tunnel syndrome or peripheral neuropathy contributing to her foot pain."

28  (PRUB00436-00437)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

3

**B.    Burgess' First Appeal Of Prudential's Termination Of LTD Benefits**

On March 30, 2006, Burgess appealed Prudential's termination of her LTD benefits.  She stated her disability began on July 14, 2005, and that she had surgery on her feet to remove neuromas that exacerbated her fibromyalgia.  Plaintiff stated she was in constant pain and her medication did not help.  She claimed she developed "peripheral neuropathy and possible tarsal tunnel syndrome."  Plaintiff indicated diagnoses of fibromyalgia, neuropathy, and depression.  (PRUB00480)

**C.    A Vocational Rehabilitation Specialist Reviewed Plaintiff's Job Duties**

On April 25, 2006, Gregg Schwartzkopf ("Schwartzkopf"), a vocational rehabilitation specialist, reviewed Burgess' material job duties.  Schwartzkopf concluded that, in performing Burgess' job duties she would "generally be required to exert force to lift/carry push/pull objects 10 pounds occasionally or up to negligible weight frequently."  In addition, she "may have need to walk and or stand occasionally throughout the work day, and have frequent use of upper extremities for reaching, handling, or fingering items."  (PRUB00533)

**D.    Prudential Requested Plaintiff's Medical Records**

On April 26, 2006, Prudential wrote to Drs. Noble and Jules P. Steimnitz, M.D., ("Dr. Steimnitz") and requested copies of Plaintiff's records.  (PRUB00607 - 00608)  Prudential also advised Burgess additional information was needed to resolve her appeal.  (PRUB00604-00605)

**E.    Dr. Joyce Bachman Reviewed Plaintiff's Claim**

On June 9, 2006, Joyce Bachman, M.D., ("Dr. Bachman") an in-house Prudential physician, reviewed Burgess' medical records.  Dr. Bachman noted Burgess had a "20-year history of fibromyalgia, a more than 15-year history of depression, and a one-year history of sleep apnea."  Dr. Bachman noted a "paucity of medical records" in the file.  She stated neither the records from Dr. Hershman's examination of Burgess on December 1, 2005, nor Dr. Davis' examination on March 1, 2006, mentioned Plaintiff's allegedly swollen fee.  Dr. Bachman noted Burgess was taking "a significant amount of pain medication for [fibromyalgia] which is not the standard of care."  She noted Dr. Davis wanted Burgess to be weaned off medication.  Dr. Bachman commented that Burgess' fibromyalgia symptoms improved when she started taking

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

4

1   Cymbalta.  Dr. Bachman noted Burgess was to avoid prolonged standing and walking, but found

2   the records did not reveal an inability to perform sedentary job duties.  (PRUB00542-00544)

3       **F.    Plaintiff's Claim Was Reviewed By Josephine Malysz, A Psychiatric Nurse**

4           On June 14, 2006, Josephine Malysz, R.N., ("Nurse Malysz") an in-house psychiatric

5   nurse, reviewed Plaintiff's psychiatric records.  Nurse Malysz noted Plaintiff's history of

6   depression and a recent flare-up caused by the loss of her job.  However, Plaintiff did not have a

7   cognitive deficit, vegetative depression, or a disabling anxiety disorder.  She found the records

8   did not show Plaintiff suffered from a disabling condition.  (PRUB00546)

9       **G.    Prudential Denied Burgess' First Appeal**

10          On June 19, 2006, Prudential notified Burgess that it was upholding its original decision

11  to terminate LTD benefits, effective November 14, 2005.  Prudential indicated it obtained

12  records from Dr. Noble, Pathways to Wellness (a psychiatric facility), and Dr. Steimnitz.

13  Prudential advised that Dr. Davis stated that "[a]ll the peripheral joints of [Burgess'] upper and

14  lower extremities were examined and revealed no swelling."  Burgess' medical records provided

15  no basis for concluding she was disabled from her sedentary occupation based upon any foot

16  condition.  (PRUB00199-00201)

17          Prudential noted Burgess' EMG/NCS studies, taken on March 14, 2006, demonstrated

18  "old peripheral neuropathy only in the muscles of [Burgess'] feet" but the muscles of her lower

19  extremities were normal.  Burgess was to avoid prolonged standing and walking.  She had a 20

20  year history of fibromyalgia and had diffuse tender points.  However, there was no indication

21  fibromyalgia precluded her from performing her sedentary job duties.  Burgess' records did not

22  mention her daily activities but noted she was taking a significant amount of pain medication,

23  beyond the standard of care.  (PRUB00199-00201)

24      **H.    Plaintiff's Physician, Dr. Pinckney, Recommended Plaintiff Decrease Her**
25          **Medications**

26          On October 17, 2006, Michael D. Pinckney, M.D., ("Dr. Pinckney") examined Burgess.

27  He concluded she had fibromyalgia, peripheral neuropathy, trochanteric bursitis, and sacroiliac

28  joint dysfunction.  Dr. Pinckney stated Burgess was taking a "laundry list of medications for

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

5

1    pain, which she receives from different providers." He recommended Burgess stop taking

2    Cymbalta and Flexeril, and decrease her dosage of Ambien. (PRUB00192)

3    **I.    Burgess' Second Appeal**

4        On December 12, 2006, Lawrence Padway ("Plaintiff's counsel" or "Padway") sent a

5    letter to Prudential appealing Plaintiff's claim for benefits. He enclosed letters from Plaintiff's

6    rheumatologists, Dr. Davis and Brian Kaye, M.D., ("Dr. Kaye"). He requested an extension of

7    time until February 19, 2007, to submit materials needed for Plaintiff's appeal. (PRUB00415)

8        On December 13, 2006, Prudential sent Padway a letter granting his request for an

9    extension. (PRUB00592)

10       In another letter dated December 12, 2006, Plaintiff's counsel requested an appeal and

11   indicated he would be sending copies of documents, including Plaintiff's statement, via the

12   mailed copy of this faxed letter. (PRUB00411) The letter shows that it was faxed on or after

13   February 20, 2007. (PRUB00411)

14       On February 21, 2007, Padway sent Prudential a letter and stated, "In error, my letter to

15   you yesterday was dated December 12 … It should have been dated February 20, 2007.

16   (PRUB00057)

17       On April 4, 2007, Plaintiff's counsel submitted a 12 page report from Dr. Davis, opining

18   that Plaintiff had been totally disabled from working in her own, or any occupation, from July,

19   2005 to the present. Dr. Davis stated that Burgess suffered from "a combination" of

20   fibromyalgia, peripheral neuropathy (possibly complicated by tarsal tunnel syndrome), and

21   depression. He stated Plaintiff suffered from widespread pain that precluded many physical

22   tasks and the performance of demanding cognitive tasks. He noted that pain in Plaintiff's feet

23   make her unable to stand for more than a few minutes. Dr. Davis stated that Burgess' ability to

24   concentrate was limited because of her fibromyalgia, depression, and medications.

25   (PRUB00024-00036)

26   **J.    Prudential Requested Plaintiff's Medical Records**

27       On June 7, 2007, Prudential wrote to Plaintiff's counsel and advised him that he had

28   repeatedly indicated that he would submit a report from Plaintiff's treating psychiatrist,

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

6

1  Christopher Sue, M.D., ("Dr. Sue"), but never did.  Prudential advised Padway to provide

2  Dr. Sue's report by June 21, 2007.  (PRUB00590-00591)

3       On July 6, 2007, Prudential requested that independent reviews be performed by a

4  psychiatrist and a rheumatologist.  (PRUB00553)

5      **K.**    **An Independent Medical Review Was Performed By Dr. Schroeder, Board Certified In Psychiatry And He Concluded Plaintiff Was Not Disabled**

6

7       On July 11, 2007, Prudential sent Plaintiff's records to Psybar, the company that arranged

8  for Plaintiff's medical records to be reviewed by Mark Schroeder, M.D., Board Certified in

9  Psychiatry, ("Dr. Schroeder").  (PRUB00584-00585)

10       On July 19, 2007, Dr. Schroeder reported that Plaintiff's medical records did not show

11  that she had a psychological or cognitive impairment from November 14, 2005 to the present.

12  Plaintiff's mental status examination was "intact" with no "severe and global psychiatric

13  impairment."  Burgess' subsequent mental status examinations were "described as essentially

14  intact."  No objective information, "such as psychological or neuropsychological testing or

15  collateral information from other sources" was in Plaintiff's records.  On April 24, 2006,

16  Plaintiff had reported improvement due to Cymbalta.  Dr. Schroeder stated the records

17  "consistently" showed Plaintiff denied side effects from her medication.  On November 8, 2006,

18  Plaintiff claimed to be in pain but reported that she was 'not depressed' and that she was

19  'sleeping well.'  Although Burgess complained of not being "welcome" at her job, the

20  psychotherapist's records dated February 1, 2006, noted Burgess had no work impairment.  On

21  August 25, 2006, Burgess went on vacation and visited her family for 10 days without any

22  mental disorder or incapacity.  Dr. Schroeder concluded Burgess suffered no psychological or

23  cognitive impairment.  (PRUB0015-0018)

24      **L.**    **An Independent Medical Review Was Performed By Dr. Howard, Board Certified In Rheumatology And Internal Medicine**

25

26       On July 11, 2007, Prudential sent Plaintiff's medical records to MLS, the company that

27  arranged the independent peer review with Paul F. Howard, M.D., Board Certified in

28  Rheumatology and Internal Medicine, ("Dr. Howard"). (PRUB00586-00587)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

7

1    On July 24, 2007, Dr. Howard prepared a detailed report regarding his review of

2  Plaintiff's medical records. Dr. Howard did not contest Burgess' diagnosis of fibromyalgia, but

3  disagreed with her physicians' opinions that she was disabled from working because of

4  fibromyalgia. Dr. Howard stated that there was:

5       ...no evidence of rheumatologic impairment associated with fibromyalgia based
        on the absence of any loss of range of motion in peripheral joints, absence of
6       inflammatory or significant mechanical arthritis, loss of coordination or range of
        motion in any of the peripheral joints, demonstrated motor weakness or atrophy.
7       (PRUB00577-00581)

8    Dr. Howard stated the diagnosis of fibromyalgia did not translate into a "functional

9  impairment in the absence of other corresponding findings of functional loss." Although

10  Plaintiff's evaluations showed constant and widespread tender points over a seven year period,

11  her records did not reveal any other objective rheumatologic findings. Dr. Howard stated "the

12  presence of widespread tender points does not translate, in and of itself, into any functional

13  impairment in the absence of other corresponding findings of functional loss." He noted that in

14  July of 2006, Burgess' treating rheumatologist recommended that she do "30 minutes a day of

15  cycling" and that she followed his recommendation. (PRUB00577-00581)

16    Dr. Howard noted Plaintiff's claim that she was disabled because of "peripheral

17  neuropathy" in her lower extremities and tarsal tunnel syndrome. He stated Plaintiff could not be

18  diagnosed with tarsal tunnel syndrome based on "bilateral axonal degeneration" in both feet.

19  (PRUB00577-00581)

20    Dr. Howard noted Dr. Davis' statement that Burgess was unable to stand for more than

21  three minutes and must elevate her feet. Dr. Howard stated foot elevation was not a treatment

22  for peripheral neuropathy in the absence of swelling. He noted Dr. Hershman's findings that

23  Burgess could wear shoes without difficulty as of December 1, 2005. None of Burgess' other

24  doctors had ever noted swelling or Burgess' inability to wear shoes. Dr. Howard noted that none

25  of Plaintiff's physicians had measured of her ability to stand for more than three minutes.

26  Dr. Howard concluded Burgess' inability to stand for more than three minutes was self-reported

27  and unsupported by objective findings. (PRUB00577-00581)

28    Dr. Howard acknowledged that Plaintiff's neuropathy caused a mild degree of functional

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

8

1   impairment due to "parasthesias in the distal lower extremities with diminished reflexes," at

2   times limiting Plaintiff's ability to stand and walk.  Accordingly, Dr. Howard restricted

3   Plaintiff's walking and standing to 30 minutes at a time and to two hours cumulatively in an

4   eight hour period.  However, Dr. Howard imposed no limitations on Plaintiff's ability to "sit,

5   reach, lift, carry, and/or perform repetitive fine motor hand activities."

6       With regard to Plaintiff's medications, Dr. Howard noted a record stating the medications

7   "may cause" cognitive impairments but Dr. Sue (Plaintiff's psychiatrist throughout 2006), noted

8   an absence of side effects related to medication.  (PRUB0001-00012) He also noted there were

9   no reports of side effects in the records of Drs. Davis or Kaye.  (PRUB0001-00012)

10      **M.**    **Prudential Denied Burgess' Second Appeal**

11      On August 3, 2007, Prudential denied Burgess' second appeal in a typed 5 page letter.

12  (PRUB00577-00581)  Prudential explained that Plaintiff's medical records indicated that she

13  was "capable of performing the material and substantial duties of her sedentary occupation from

14  November 14, 2005 – forward," with certain restrictions on standing and walking.  Prudential

15  discussed Plaintiff's medical records and advised that they were reviewed by an independent

16  board certified psychiatrist, Dr. Schroeder, and an independent board certified rheumatologist,

17  Dr. Howard.  Prudential discussed the opinions of these independent physicians and concluded

18  that, based upon Plaintiff's medical records, she was not totally disabled from her regular

19  occupation as defined under the Plan.  (PRUB00577-00581)

20      **N.**    **The Governing Plan Language**

21      The Townsend Plan defines disability as follows:

22      You are disabled when Prudential determines that:

23      • you are unable to perform the **material and substantial duties** of your
            **regular occupation** due to your **sickness** or **injury**.
24
        • you have a 20% or more loss in your **indexed monthly earnings** due to
25           that sickness or injury; and

26      • you are under the **regular care** of a **doctor**.

27      After 24 months of payments, you are disabled when Prudential determines
        that due to the same sickness or injury, you are unable to perform the duties of
28      any **_gainful occupation_** for which you are reasonably fitted by education,

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

9

1    training or experience. (PRUB00632)

2    The Plan defines material and substantial duties as follows:

3        ***Material and substantial duties*** means duties that:

4        • are normally required for the performance of your regular occupation; and

5        • cannot be reasonably omitted or modified, except that if you are required
6          to work on average in excess of 40 hours per week, Prudential will
           consider you able to perform that requirement if you are working or have
7          the capacity to work 40 hours per week.  (PRUB00632)

    The Plan defines regular occupation as follows:

8
        ***Regular occupation*** means the occupation you are routinely performing when
9        your disability begins.  Prudential will look at your occupation as it is
         normally performed instead of how the work tasks are performed for a
10       specific employer or at a specific location. (PRUB00632)

11       The sole issue in this action is whether Plaintiff was disabled from her regular occupation

12   under the definition set forth above.  The question of whether Plaintiff is or was disabled from

13   any gainful occupation was never before the claim administrator because Plaintiff never

14   exhausted 24 months of disability payments under the regular occupation standard.  This is

15   discussed later in Defendants' motion.

16   **III.    PRUDENTIAL THOROUGHLY REVIEWED PLAINTIFF'S CLAIMS AND THE
             MEDICAL INFORMATION PROVIDED SIMPLY FAILS TO MEET THE
17           PLAN'S REQUIREMENTS FOR LTD BENEFITS**

18       **A.    Prudential Performed A Thorough, Exhaustive, And Detailed Review Of
                 Plaintiff's Claims**
19

20       Prudential performed a thorough, exhaustive, and detailed review of Plaintiff's claims.

21   Prudential consistently requested Plaintiff's medical records from her treating physicians and had

22   them reviewed by multiple medical and disability professionals.  On January 3, 2006, Prudential

23   had Plaintiff's medical records reviewed by a nurse and a vocational rehabilitation counselor.

24   On April 25, 2006, Prudential had a vocational rehabilitation specialist review Plaintiff's

25   material job duties.  (PRUB00533)  On April 26, 2006, Prudential wrote to Plaintiff's treating

26   physicians, Drs. Noble and Steimnitz, and requested copies of Plaintiff's medical records.

27   Prudential also wrote to Plaintiff on April 26th and advised her that additional information was

28   needed to resolve her appeal.  (PRUB00608-00607, PRUB00604-00605)  Plaintiff's medical

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

**10**

1    records were reviewed by Dr. Bachman on June 9, 2006 (PRUB00542-00544), and by Nurse

2    Malysz on June 14, 2006. (PRUB00546)

3         On December 13, 2006, Prudential wrote to Plaintiff's counsel and granted his request for

4    an extension of time to provide medical information in support of Plaintiff's appeal until

5    February 19, 2007. (PRUB00591, PRUB00550) On June 7, 2007, Prudential provided

6    Plaintiff's counsel with another extension until June 22, 2007. (PRUB00588) On July 6, 2007,

7    Prudential advised Plaintiff's counsel that it was now past June 22, 2007, and that it had started

8    performing a thorough evaluation of Plaintiff's claim based on the information currently

9    contained in her file. (PRUB00588) Accordingly, Prudential provided Plaintiff with multiple

10   extensions of time to submit documentation in support of her appeal. On June 7, 2007,

11   Prudential wrote to Plaintiff's counsel to follow-up on the status of a report from Dr. Sue, which

12   he had previously indicated he was going to submit. (PRUB00590-00591)

13        On July 6, 2007, Prudential referred Plaintiff's medical records for independent peer

14   reviews by a board certified psychiatrist, Dr. Schroeder, and a board certified rheumatologist, Dr.

15   Howard. (PRUB00551-00553) Prudential reviewed and considered the reports from Drs.

16   Schroeder and Howard, submitted on July 19, 2007 and July 24, 2007, respectively.

17   (PRUB0015-0018; PRUB00001-00012)

18        On August 3, 2007, Prudential denied Plaintiff's appeal in a five page, single-spaced,

19   typed letter that explained the basis for its decision. (PRUB00577-00581)

20        The administrative record documents Prudential's extensive efforts to thoroughly and

21   exhaustively review Plaintiff's claims by consistently requesting records from Plaintiff's treating

22   physicians, granting Plaintiff multiple extensions of time to submit information in support of her

23   appeal, and having Plaintiff's records reviewed by multiple in-house medical professionals and

24   two independent board certified physicians with different specialties.

25   **B.    Plaintiff's Medical Information Simply Fails To Support A Finding That She
          Was Disabled Under The Townsend Plan**

26

27        **1.    Plaintiff Has The Burden Of Establishing Disability Under The Plan**

28   When a claimant files a claim for LTD benefits, the burden is on the claimant to establish

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

11

1    disability under the terms of the Plan.  It is Prudential's duty, as the claims administrator, to

2    review all claims and make benefit determinations according to Plan terms.  Prudential would be

3    breaching its fiduciary duty to all Plan participants if it paid benefits to claimants who did not

4    meet Plan criteria.  Although Plaintiff has diagnoses of fibromyalgia, peripheral neuropathy, and

5    depression, these diagnoses alone do not establish functional impairment or disability under the

6    Plan.  Plaintiff must show that these conditions cause her to be unable to perform the material

7    and substantial duties of her regular occupation.  In the instant matter, Plaintiff's medical

8    information simply fails to support a finding that she is disabled from performing the material

9    and substantial duties of her regular, sedentary occupation as a legal secretary.

2.    **Plaintiff's Claims Of Depression Are Completely Contradicted By The Evidence In The Record**

12    Plaintiff's claims of disability due to depression are completely contradicted by the

13    evidence in the record.  As noted by Nurse Malysz on June 14, 2006,  Plaintiff did not have a

14    cognitive deficit, vegetative depression, or a disabling anxiety disorder.  (PRUB00546)  On July

15    19, 2007, Dr. Schroeder found that Plaintiff suffered no psychological or cognitive impairment.

16    (PRUB00015-00018)  He noted that there were no psychological or neuropsychological test

17    results to verify Plaintiff's self-reported symptoms.  The records documented that Plaintiff

18    improved from taking Cymbalta and did not suffer any side effects.  As of February 1, 2006,

19    Plaintiff's treating psychotherapist stated that she was not suffering from work impairment.  In

20    August of 2006, Plaintiff went on a family vacation for 10 days without any mental disorder.  On

21    November 8, 2006, it was noted that Plaintiff was not depressed and was sleeping well.

22    (PRUB00015-00018)  The evidence in the record fails to establish disability based upon claims

23    of depression.

3.    **The Evidence In The Record Fails To Show Plaintiff Was Disabled From Her Regular Occupation Due To Fibromyalgia**

26    Plaintiff's claims of disability due to fibromyalgia are weak and contradicted by the

27    medical records.  Dr. Howard, an independent, board certified rheumatologist, specifically noted

28    that Plaintiff's records indicated that she did not suffer from a loss of range of motion in the

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

12

1    peripheral joints, and that Plaintiff had no inflammatory or significant mechanical impairment,

2    arthritis, motor weakness or atrophy. (PRUB00069)  Although Plaintiff claimed to have pain in

3    her feet, she was performing 30 minutes of cycling day per at the direction of her treating

4    rheumatologist, Dr. Davis. (PRUB00011)  As of December 1, 2005, Dr. Hershman noted that

5    Plaintiff could wear shoes without difficulty. (PRUB00492, PRUB0009-00010)  None of

6    Plaintiff's other physicians ever reported any swelling or the inability to wear shoes.

7    (PRUB00010)  Though Plaintiff claimed she was unable to stand for more than several minutes,

8    none of her physicians ever measured her ability to stand. (PRUB00577-00581 and

9    PRUB00010)  This is something that could have easily been measured by any of Plaintiff's

10    treating physicians.

### 4.    Plaintiff's Peripheral Neuropathy Did Not Cause Significant Impairment

13    With regard to Plaintiff's claims of peripheral neuropathy, Dr. Howard noted that this

14    caused a mild impairment and restricted Plaintiff's walking and standing to 30 minutes at a time

15    and to two hours cumulatively in an eight hour time period. (PRUB00010)  However, no

16    limitations were imposed on Plaintiff's ability to "sit, reach, lift, carry, and/or perform repetitive

17    fine motor hand activities." (PRUB00010)  Such work restrictions would not prevent Plaintiff

18    from performing the material and substantial duties of her regular occupation as a legal secretary

19    which was sedentary and involved frequent use of upper extremities and only an occasional need

20    to walk or stand. (PRUB00533)

### 5.    The Evidence Indicates Plaintiff Does Not Want To Work And Takes An Excessive Amount Of Medication

23    It seems that Plaintiff may have lost her job at Townsend or did not want to return to her

24    position at Townsend.  On December 28, 2005, Plaintiff advised Prudential that Townsend gave

25    her job away. (PRUB00527)  On February 1, 2006, Plaintiff complained of not being "welcome"

26    at her job, as documented in her psychotherapist's records. (PRUB00470)  Further, on

27    February 1, 2006, it was noted that Plaintiff's short-term objectives included a "job search" and

28    "social support to relieve stress of job-related grief loss." (PRUB00470, PRUB00476) The fact

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

13

1   that Plaintiff's goals included looking for a job indicates that she and her psychotherapist both

2   believed she could work. A psychotherapy note dated February 8, 2006, indicates a discussion

3   about 'finding part time work' as a way for Plaintiff to obtain more structure. (PRUB00474)

4   This documentation indicates Plaintiff was capable of working and had simply lost her job at

5   Townsend.

6        Multiple physicians indicated that Plaintiff was taking an excessive amount of medication

7   and her own treating physicians recommended that she stop taking or decrease her medications.

8   On June 9, 2006, Dr. Bachman noted Burgess was taking "a significant amount of pain

9   medication for [fibromyalgia] which is not the standard of care." (PRUB00542-00544) She

10  noted that Dr. Davis wanted Plaintiff to be weaned off of medication. (PRUB00542-00544) On

11  October 17, 2006, Dr. Pinckney stated that Burgess was taking a "laundry list of medications for

12  pain, which she receives from different providers." (PRUB00192) Dr. Pinckney recommended

13  that Plaintiff stop taking Cymbalta and Flexeril, and decrease her dosage of Ambien.

14  (PRUB00192) The fact that Plaintiff's own physicians advised her to cut back on her

15  medications undermines Plaintiff's claims of severe impairment and the need for so much

16  medication. Plaintiff may be self-impaired and lack motivation due to self-medicating, but this

17  does not make her functionally disabled from performing her regular occupation as a legal

18  secretary.

19       In sum, the totality of the evidence in the record overwhelmingly contradicts Plaintiff's

20  claims that she is disabled from performing the material duties of her regular occupation.

21  Accordingly, summary judgment should be granted in favor of Defendants.

22  **IV.**   **THE EVIDENCE IN THE RECORD CONTRADICTS PLAINTIFF'S CLAIMS OF**
23        **DISABILITY**

23      **A.**   **Plaintiff Has The Burden Of Establishing That She Is Disabled**
24

25       In order for Plaintiff to prevail on her summary judgment motion she must she show that

26  there is no disputed issue of material fact regarding her ability to meet Plan criteria for LTD

27  benefits. Plaintiff fails to meet this burden because her claims are weak and contradicted by the

28  weight of the evidence in the record.

14

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Plaintiff erroneously asserts that Prudential's consultants did not consider all of the

2    evidence in the record, such as her subjective claims, but Plaintiff fails to provide any support for

3    her assertion.  (See Plaintiff's Motion for Summary Judgment ("PMSJ") at p. 3:18-20)  This

4    allegation is addressed later in this Motion.

5    Although Plaintiff points out that she has a 20 year history of fibromyalgia (PMSJ, at p.

6    3:12-13), the presence of a diagnosis alone (or history of a condition), does not make Plaintiff

7    entitled to LTD benefits.

8    **B.    Plaintiff Relies On Irrelevant, Outdated Information To Support Her Claim**

9    Plaintiff asserts that she saw a chronic pain specialist in 1999 and that a sleep study

10    conducted in 2004 showed that she had reduced sleep efficiency (PMSJ, at p. 3:21-22;25-26)

11    This outdated information is irrelevant and fails to establish that Plaintiff was disabled from

12    performing her regular occupation during the time period in question from November 15, 2005

13    to October 13, 2007.  Furthermore, it was noted by Dr. Davis on March 1, 2006, that Plaintiff

14    was "presently sleeping well." (PRUB00224-00225)

15    **C.    Plaintiff's Claim Of Exhaustion After Exercise Is Contradicted And Fails To**
16    **Establish Disability From Her Regular, Sedentary Occupation**

17    In support of Plaintiff's claims, she asserts that she became exhausted 2 days after

18    exercising. (PMSJ, at p. 4:9-10)  However, Plaintiff fails to explain how this makes her disabled

19    from performing her sedentary occupation as a legal secretary, which does not involve rigorous

20    exercise.  Furthermore, Plaintiff's claim is seriously undermined by her own treating physician's

21    records.  On March 1, 2006, Dr. Davis stated he had talked to Plaintiff about "the need for a

22    gradually increasing exercise program." (PRUB00224-00225)  On July 12, 2006, Dr. Davis

23    noted Plaintiff was biking for 30 minutes per day. (PRUB00222)  Further, when Dr. Davis

24    examined Plaintiff on March 1, 2006, he stated she was a "Pleasant woman in no apparent

25    distress." (PRUB00436)  He noted all "peripheral joints of [Plaintiff's] upper and lower

26    extremities were examined and revealed no swelling." (PRB00225)

27    **D.    Plaintiff's Peripheral Neuropathy Causes Only Mild Impairment**

28    Plaintiff asserts that she continued to have foot pain and that EMG and NCV studies

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

15

1  showed a loss of function in her large foot nerves. (PMSJ, at p. 4:13-14)  In Dr. Howard's peer

2  review report he noted that this showed evidence of peripheral neuropathy but explained that this

3  caused only a *mild* impairment and imposed restrictions of walking and standing for 30 minutes

4  at a time, for two hours cumulatively, in an eight hour period. (PRUB00010)  Prudential took

5  this into consideration and noted these limitations and restrictions in its final denial letter dated

6  August 3, 2007. (PRUB00577-00581)  Further, Plaintiff required no restrictions or limitations

7  with respect to her ability to "sit, reach, lift, carry, and/or perform repetitive and fine motor hand

8  activities." (PRUB00580 & PRUB00010)

**E.    Plaintiff's Claims That Her Medications Caused Her To Suffer From Cognitive Impairments Are Completely Unfounded And Contradicted By The Evidence In The Record.**

11  Plaintiff asserts in her Motion for Summary Judgment that the drug Lyrica was generally

12  effective but caused "some cognitive issues," leaving her to choose between "increased pain or

13  less pain but cognitive incapacity." (PMSJ, at p. 4:25-5:2)  In support of Plaintiff's grandiose

14  allegation, she simply states that: 1) she was taking 10 different medications in October of 2006

15  and that, 2) Drs. Davis and Noble noted that she was taking 9 narcotic class pills which "*can

16  impair cognitive function.*" (Emphasis supplied.) (PMSJ, at p. 5:21-22 and p. 6:6-8)  Of course,

17  just because a medication *can* cause a cognitive impairment does not mean that it necessarily

18  does or that Plaintiff actually suffered a cognitive impairment from her medication. Plaintiff is

19  unable to point to a single medical record to document that she suffered from a cognitive

20  impairment from a particular medication.

21  Moreover, Plaintiff's own physicians' records contradict her claims that she suffered a

22  cognitive impairment from her medications. (PRUB00017)  Plaintiff's own psychotherapist

23  indicated she had no work impairment. In Dr. Schroeder report he stated Plaintiff's records

24  "consistently" showed that she denied side effects from her medications. (PRUB00467,

25  PRUB00017)  When Dr. Howard was asked if the medical records supported significant adverse

26  side effects from any medication or combination thereof, he stated:

27  The medical records from her psychiatrist, Dr. Sue, throughout 2006, clearly
noted the absence of side effects related to medications. There was no mention of

28  side effects related to a cognitive impairment in the records of Dr. Davis in 2006

MPA IN SUPPORT OF CROSS-MOTION & OPP TO MSJ          Case No. C07-05310 (JSW) (ADR)

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1  or by Dr. Kay in 2006.  There is a notation of that she takes multiple medications
   which may cause cognitive impairment, but there are no references to cognitive
2  impairment in any of the medical records available.  Specifically, there is no other
   evidence in terms of formal neuropsychological testing or notation of any
3  cognitive impairment from any single medication or combination of medications
   present throughout the available medical records from multiple practitioners.
4  (PRUB00011)

5       The evidence in the record completely undermines and contradicts Plaintiff's claim that

6  she is faced with choosing between 'increased pain or less pain but cognitive incapacity.'

7  (PMSJ, at p. 4:25-5:2)

8       Plaintiff states at she obtained a Global Assessment of Functioning ("GAF")[1] score of 55,

9  when diagnosed by her psychiatrist, Dr. Sue.  (PMSJ, at p. 5:9-10)  However, she fails to show

10 how this score has any bearing on her ability to perform the material duties of her regular

11 occupation.  Plaintiff states her GAF score indicates "moderate symptoms," such as moderate

12 difficulty in social or occupational functioning, i.e., "few friend, conflicts with peers and co-

13 workers."  (PMSJ, at p. 5:12-15)  Even if the record contained documentation that showed

14 Plaintiff had conflicts with co-workers, it would have nothing whatsoever to do with her

15 functional capacity to perform her regular job duties as a legal secretary.

16      Plaintiff states she began seeing Dr. Michael Pinckney for chronic pain management in

17 October of 2006 and states that "The administrative record stops in the early part of Dr.

18 Pinckney's treatment."  (PMSJ, at p. 5:25-6:2)  This is false because the record clearly extends

19 though August of 2007.

20 **F.    Plaintiff's Claim That Her Personal Statement Is Missing From The Record
        Is Inappropriate At This Stage Of Litigation Because She Was Required To
21      Notify Defendants If She Believed The Record Was Incomplete By March 19,
        2008**

22

23      For the first time during this litigation, in Plaintiff's Motion for Summary Judgment, she

24 alleges that the administrative record is incomplete and that her personal statement (attached as

25 exhibit 2 to the Declaration of Plaintiff's counsel ("Padway Dec.")), is missing from the record.

26

27 [1] The Global Assessment of Functioning ("GAF") is a scale from zero (0) through 100, used by
   mental health clinicians and physicians to rate the psychological, social, and occupational
28 functioning if adults.  http://en.wikipedia.org/wiki/Global_Assessment_of_Functioning.

17

1    (PMSJ, at p. 6:2, and p. 6:17-20)  Plaintiff's actions are completely improper and in violation of

2    her stipulation contained in the Joint Case Management Statement discussed below.

3         Plaintiff produced her initial disclosures and production of documents to Defendants on

4    January 18, 2008.  However, she never produced the personal statement which she now claims is

5    missing from the record.  (See Exhibit 2 to Padway Dec.)  Defendants produced the

6    administrative record to Plaintiff on March 5, 2008.  As stipulated in the Parties' Joint Case

7    Management Statement, which was filed with the Court on January 17, 2008, Plaintiff agreed to

8    notify Defendants by March 19, 2008, if she believed the record was incomplete.  (Joint Case

9    Management Statement at ¶ 7)  Plaintiff never advised Defendants that the administrative record

10    was incomplete and has never attempted to supplement her production on January 18, 2008.

11         Since Plaintiff filed her Motion for Summary Judgment, Prudential has reviewed its files

12    and has no record of receiving Plaintiff's statement.

13         Furthermore, Defendants find it striking that Plaintiff's counsel has chosen to attach as

14    Exhibit 2 to his declaration, a transmittal letter that clearly indicates Plaintiff's statement was not

15    enclosed with it.  (Exhibit 2 to Padway Dec.)  The transmittal letter attached as Exhibit 2 to

16    Padway's Declaration is dated December 12, 2006, but was faxed sometime on or after February

17    20, 2007, as shown on the bottom of the document.  (See also PRUB00410)  The transmittal

18    letter indicates that Plaintiff's statement would be provided, but states that it would be enclosed

19    *"with the mailed copy of this letter."*  (Emphasis supplied).  (PRUB00410)  If Plaintiff's counsel

20    had actually mailed Prudential a letter that enclosed Plaintiff's statement, then why did Plaintiff's

21    counsel provide a transmittal letter that clearly states Plaintiff's allegedly missing statement was

22    not enclosed with it?  Presumably, if Plaintiff had mailed its letter dated December 12, 2006, it

23    would have sent a revised version of it, stating that Plaintiff's statement was *actually enclosed*

24    with it.  This begs the question of whether Plaintiff's statement was ever submitted to Prudential.

25         Moreover, if Plaintiff's statement were such an important document then why did

26    Plaintiff wait until filing her Motion for Summary Judgment to allege that it was missing?

27    Plaintiff's flagrant impropriety is inexplicable and Plaintiff's statement should not be considered

28    as evidence by the Court.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

18

1    In addition to the foregoing, Plaintiff attaches literature entitled Diagnostic and Statistical

2    Manual of Mental Disorders ("DSM-IV-TR") as Exhibit 1 to Padway's Declaration. This

3    literature is outside of the administrative record and should not be admitted into evidence.

4    **V.    PLAINTIFF'S CLAIMS MUST FAIL BECAUSE THEY ARE IRRELEVANT,**
     **CONTRADICTED, OR BASED ON FALSE ASSUMPTIONS**

5

6    **A.    Plaintiff's Attempts To Discredit Dr. Howard's Report Are Without Merit**

7    Plaintiff claims Prudential failed to provide Dr. Howard with a copy of her allegedly

8    missing statement. (PMSJ, at p. 8:23-25)  As noted above, Prudential has reviewed its files and

9    has no record of receiving Plaintiff's allegedly missing statement.  For the reasons discussed in

10   the section immediately above, it should not be admitted into evidence.  Accordingly, any

11   argument premised on Plaintiff's allegedly missing statement should be disregarded.

12   **B.    Plaintiff's Claim That Dr. Howard's Report Is Not A "Peer Review" Or A**
     **"Consultation" Is Inconsequential And Unfounded**

13

14   Plaintiff's claims that Dr. Howard's report cannot be labeled as a "peer review" or

15   "consultation" are misguided and of no consequence.  (PMSJ, at p. 9:1-6)  Plaintiff claims Dr.

16   Howard's peer review report should not be labeled as such (or as a "consultation") because he

17   does not challenge or comment upon the appropriateness of her treatment or diagnosis.  (PMSJ,

18   at p. 9:2-4)  Plaintiff's allegations miss the point entirely.  Dr. Howard was asked to comment on

19   Plaintiff's "functional impairment(s) from November 14, 2005 forward," based upon the

20   documentation in the record.  (PRUB00586-00587)  He was not asked to evaluate Plaintiff's

21   treatment or to provide an additional opinion or recommendation regarding further medical care.

22   Further, Prudential does not characterize Dr. Howard's review as a "consultation."  Plaintiff

23   provides absolutely no authority for what should (or should not) be labeled a "peer review

24   report" or "consultation."  Nonetheless, Plaintiff's focus on labels, i.e., peer reviews and

25   consultations, is misguided, irrelevant, and inconsequential.

26   **C.    Plaintiff's Claim That Dr. Howard "Conclusively Credits" Dr. Sue's Note is**
     **False**

27

28   Dr. Sue's note indicates Plaintiff was not cognitively impaired due to her medication.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

19

1    (PRUB00011, PRUB00017-00018)  Plaintiff alleges Dr. Sue's note is "credited conclusively" by

2    Dr. Howard, "even if based on a report from [Plaintiff], but if [Plaintiff] reports she can only

3    stand for three minutes, that report is challenged because no one reports having timed her."

4    (PMSJ, at p. 10:5-9)  Plaintiff's claim implies that Dr. Howard's method of analysis is

5    inconsistent or biased.  Plaintiff claim also implies that if Dr. Howard conclusively credits Dr.

6    Sue's note then he must conclusively credit Plaintiff's claim that she can only stand for three

7    minutes. (PMSJ, at p. 10:5-9)  Plaintiff's argument is flawed and based on the erroneous

8    assumption that Dr. Howard 'conclusively credited' Dr. Sue's note.  Dr. Howard did not

9    'conclusively credit' Dr. Sue's note but rather, considered it as one piece of evidence within the

10   context of the record as a whole.  Further, Dr. Howard referenced Plaintiff's other treating

11   physicians and stated there was "no mention of side effects related to a cognitive impairment in

12   the records of Dr. Davis in 2006 or by Dr. Kay in 2006." (PRUB00011)

**D.      Plaintiff's Argument That Dr. Howard Disregards Her Claims Is Contradicted And Unsupported**

15   Plaintiff argues that Dr. Howard disregarded anything she reported because he noted in

16   his report that: "There is no measurement of [Plaintiff's] ability to stand, rendering her inability

17   to stand for more than 3 minutes self-reported…" (PMSJ, at p. 10:7-9)  Plaintiff's allegation is

18   absurd.  Dr. Howard obviously did not disregard Plaintiffs reports because he explicitly

19   acknowledged her claim that she could only stand for 3 minutes.  Dr. Howard's comment that

20   none of Plaintiff's physician's measured her ability to stand for more than 3 minutes is simply an

21   accurate observation about the information contained in Plaintiff's medical records.  According

22   to Plaintiff's logic, if Dr. Howard takes note of anything in the record (including the absence of

23   documentation) that does not support her claim, then he has automatically disregarded her claim.

24   This is illogical and nonsensical and contradicted by Dr. Howard's report.

**E.      Plaintiff Mischaracterizes Prudential's And Dr. Howard's Analyses Of Her Medical Records When She Erroneously Claims That She Is Required To Prove Her Disability By Means Of Nonexistent Objective Findings**

27   Plaintiff erroneously claims that Dr. Howard requires that she prove her disability by

28   means of "nonexistent objective findings." (PMSJ, at p. 9:17-18)  She claims that her functional

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1   impairment is the pain and fatigue caused by her fibromyalgia and alleges that there are no

2   objective means of measuring pain and fatigue directly. (PMSJ, at p. 9:24) Plaintiff alleges that

3   Prudential's effort to require its insureds to prove pain and fatigue by objective measurement is

4   simply a means to avoid payment. (PMSJ, at p. 9:24-26) Plaintiff's assertions are erroneous and

5   mischaracterize both Dr. Howard's and Prudential's evaluations of her claims.

6       As discussed above, Dr. Howard considered and weighed all of the evidence in the record

7   in formulating his opinion and answering the questions posed to him by Prudential. Further, Dr.

8   Howard is not the ultimate decision-maker regarding whether Plaintiff receives benefits.

9       Prudential does not require its insureds to prove pain and fatigue by objective

10  measurements. Furthermore, Prudential was not attempting to measure Plaintiff's pain and

11  fatigue but rather, to evaluate the extent to which her alleged pain and fatigue impairs her ability

12  to function and there are ways to measure peoples' functional ability/impairment. For example,

13  Plaintiff's ability to stand for more than three minutes could have easily been measured by any of

14  her treating physicians. The fact that none of her physician's bothered to measure this does not

15  mean that it could not be done.

16      Furthermore, Plaintiff contradicts herself because she states in her Motion for Summary

17  Judgment that there are "numerous objective findings which would be expected to cause her

18  substantial chronic pain." (PMSJ at p. 8:7) For Plaintiff to argue that she is being required to

19  prove her pain with 'nonexistent objective evidence' (which she is not) and to then assert that

20  there are "numerous objective findings" is untenable and contradictory.

21      Plaintiff alleges Dr. Howard does not address trochanteric bursitis or sacroiliac joint

22  dysfunction and therefore will "necessarily underreport her limitations." (PMSJ, at p. 10:20-21)

23  However, Plaintiff fails to point out how either of these conditions impacts her ability to

24  function. Furthermore, when Plaintiff submitted her second appeal she provided a report on

25  April 4, 2007, signed by Dr. Davis. This report states Plaintiff's disability is "a combination of

26  Fibromyalgia, Peripheral Neuropathy possibly complicated by tarsal tunnel syndrome, and

27  depression." (PRUB00025) Trochanteric bursitis and sacroiliac joint dysfunction do not make

28  Dr. Davis' list.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

21

1    **VI.    ERISA CLAIM ADMINISTRATORS ARE NOT BOUND BY SOCIAL**
2    **SECURITY ADMINISTRATION DISABILITY DETERMINATIONS**

3    Plaintiff's claim that the Court should find her disabled because she is disabled under the

4    "analytic methods of Social Security Disability law" is false. (PMSJ, at p. 14:3-6)  Social

5    Security case law does not apply to ERISA benefits determinations.  *Black & Decker Disability*

6    *Plan v. Nord*, 538 U.S. 822, 829-30 (2003).  In *Black & Decker*, the Supreme Court held that,

7    "ERISA does not require plan administrators to accord special deference to the opinions of

8    treating physicians."  The Supreme Court noted that this so called "treating physician's rule" was

9    originally developed by the Ninth Circuit to control Social Security disability determinations.  *Id.*

10    at 823.  The Supreme Court further stated:

11    In determining entitlement to Social Security benefits the adjudicator measures
      the claimant's condition against a uniform set of federal criteria.  The validity of a
12    claim to benefits under an ERISA plan, on the other hand, is likely to turn, in
      large part, on the interpretation of terms in the plan at issue...Deference is due the
13    Labor Secretary's stated view that ERISA is best served by preserving the greatest
      flexibility possible for operating claims process systems consistent with a plan's
14    prudent administration.  *Id.*

15    Plaintiff alleges that "decisions by the SSA are relevant evidence of disability in ERISA

16    cases." (PMSJ, at p. 12:10-11)  However, she fails to cite a single Ninth Circuit case in support

17    of this particular contention.  Plaintiff references *Saffon v. Wells Fargo & Company Long Term*

18    *Disability Plan*, 522 F.3d 863, 872-873 (9th Cir., 2008) wherein the Ninth Circuit noted Social

19    Security law strictly for the observation that pain cannot *always* be measured by objective

20    evidence.   However, the Ninth Circuit has not extended the relevance of Social Security law to

21    ERISA cases, if any, beyond this discrete and limited reference noted in *Saffon*. (See *Shane v.*

22    *Albertsons' Inc. Employee's Disability Plan,* 381 F.Supp. 2d 1196 (2005), "the jurisprudence and

23    regulations of the social security laws are of dubious relevance;" See *Coleman-Lea v.*

24    *Metropolitan Life Ins. Co.*, 2006 WL 3591229 (N.D. Cal.), "the rules and standards governing

25    ERISA and social security benefits decisions differ.")

26    The Ninth Circuit does not require claim administrators to consider an employee's Social

27    Security Disability Income ("SSDI") award.  In *Madden v. ITT Long Term Disability Plan*, 914

28    F.2d 1279, 1285 (1990) , the Ninth Circuit Court of Appeals held that a delegate's decision to

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA  94111

22

1   terminate an employee's plan benefits was neither arbitrary nor capricious, even though the

2   delegate did not consider the employee's social security award.  *Id.*  The *Madden* Court rejected

3   the plaintiff's argument that he was entitled to ERISA disability benefits because he received a

4   social security disability award, holding that:

5           ERISA fiduciaries would be stripped of all administrative discretion, as they
            would be required to follow the Department of Health and Human Services
6           decisions regarding social security benefits even where the Plan determines
            benefits under different standards or the medical evidence presented is to the
7           contrary.  *Id.* at 1286.

8           Social Security determinations and case law regarding SSDI benefits are neither

9   controlling nor relevant to the instant matter.   The sole issue in this action is whether Plaintiff is

10  disabled from performing her regular occupation according to the terms of the Townsend Plan,

11  not whether Plaintiff meets criteria for SSDI benefits or under a SSDI analysis.  Accordingly,

12  Plaintiff's claim that she is disabled under the Social Security "analytic method" is irrelevant.

13  Likewise, Plaintiff's assertion that the Court is "required to credit [her] statement of limitations,

14  even if it is in excess of that which would ordinarily be expected and find her disabled" is false.

15  (PMSJ, at p. 16:1-3)

16  **VII.   THE ONLY ISSUE BEFORE THE COURT IS WHETHER PLAINTIFF WAS
          DISABLED FROM HER REGULAR OCCUPATION**
17

18          Plaintiff erroneously seeks benefits from November of 2005 to the present.  However,

19  even if the Court agrees with Plaintiff, benefits cannot be awarded beyond October 12, 2005.

20  The Townsend Plan provides that an eligible participant may receive LTD benefits for up to 24

21  months if a participant is disabled from his or her "regular occupation" as defined by the

22  Townsend Plan.  Once a Plan participant is paid LTD benefits for 24 months, in order to

23  continue to receive benefits, the participant must meet a stricter definition of disability and must

24  be disabled from "any gainful occupation." (PRUB00632)

25          Plaintiff was paid LTD benefits for a total of one month, from October 13, 2005 to

26  November 13, 2005.  She never exhausted 24 months of LTD benefits under the "regular

27  occupation" definition of disability.  Accordingly, the question of whether Plaintiff was disabled

28  from "any gainful occupation" was never before the claim administrator, Prudential.

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

23

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

1    Under ERISA, the Court's role is to review the propriety of a claim administrator's

2   decision, not to act as the claim administrator by construing plan terms and making decisions that

3   were never before a claim administrator in the first place.  In *Vizcaino v. Microsoft Corp.*, 120

4   F.3d 1006, 1013-1014 (9th Cir. 1997), the Ninth Circuit Court of Appeals remanded an issue

5   regarding benefits under an ERISA plan to the claim administrator when the particular question

6   at issue had never been before the claim administrator to decide.  *Id.*  The *Vizcaino* Court

7   explained that the determination of ERISA benefits involved an "issue of plan construction, one

8   on which the administrator has not opined."  *Id.*  The *Vizcaino* Court stated, "…we should not

9   allow ourselves to be seduced into making a decision which belongs to the plan administrator in

10  the first instance. . .we cannot, and will not, predict how the plan administrator, who has the

11  primary duty of construction, will construe the terms..."  *Id.*  The *Vizcaino* Court stated:

12      We would set a poor precedent were we to intrude upon that exercise of discretion
        before he [the claim/plan administrator] has even considered and ruled upon the
13      issue.  We would encourage the dumping of difficult and discretionary decisions
        into the laps of the courts, although one of the very purposes of ERISA is to avoid
14      that kind of complication and delay.  *Id.*

15      On July 24, 2008, the Seventh Circuit Court of Appeals held that an ERISA Plan

16  Administrator must be given the initial opportunity to determine whether a claimant is disabled

17  from "all occupations" under the terms of a plan, even when the plan administrator initially

18  makes a determination that a claimant can perform her "own occupation," and it is later judicially

19  determined that such "own occupation" decision was arbitrary and capricious.  *Pakovich v.*

20  *Broadspire Services*, _F.3d_, Case No. 07-1520, 2008 WL 2841140 (July 24, 2008)..

21      Plaintiff fails to provide any Ninth Circuit authority to support her contention that the

22  Court may award benefits beyond October 12, 2007, or determine that Plaintiff is disabled from

23  "any gainful occupation."

24      Plaintiff attempts to provide factual arguments to support her claim that benefits should

25  be awarded up to the time of judgment but all of them are without merit.   She references the

26  "treating physician's rule" but, as set forth above, the treating physician's rule is inapplicable to

27  ERISA actions.  Plaintiff asserts that there was no effort to perform "any type of vocational

28  analysis" (PMSJ, at p. 18:1-3) but Prudential is not required to perform a vocational analysis and

1    Plaintiff's claims were reviewed by vocational rehabilitation personnel. Further, her claim that

2    the Social Security Administration found her disabled is wholly irrelevant to the instant matter.

3    (PMSJ, at p. 18:4-5)

4         For the reasons discussed herein, any award or determination of disability under the "any

5    gainful occupation" definition of disability would be wholly inappropriate and in contradiction to

6    the very purpose of ERISA.

7    **VIII.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT SHOULD BE
     GRANTED AND PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

8    **SHOULD BE SUMMARILY DENIED**

9         In conclusion, the weight of the evidence in the record overwhelmingly contradicts

10   Plaintiff's claims of disability. Plaintiff's own treating physicians indicate that Plaintiff was

11   exercising, that she had no impairment preventing her from working, and that her medications

12   did not cause cognitive impairments. Two independent, board certified physicians reviewed

13   Plaintiff's records and separately concluded that she was not disabled from her regular

14   occupation. The evidence in the record supports a finding that Plaintiff was not disabled from

15   her regular occupation. Accordingly, the Court should deny Plaintiff's Motion for Summary

16   Judgment and grant summary judgment in favor of Defendants.

17   DATED: August 22, 2008                    GORDON & REES LLP

18                                             By _____

19                                             Ronald K. Alberts
                                               Tad A. Devlin
20                                             Shannon L. Victor
                                               Attorneys for Defendants
21                                             THE PRUDENTIAL INSURANCE CO. OF
                                               AMERICA, Real Party in Interest, and
22                                             TOWNSEND AND TOWNSEND AND
                                               CREW LLP LONG TERM DISABILITY
23                                             PLAN

24

25

26

27

28

Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, CA 94111

25