Laurence F. Padway (SBN 083914)
LAW OFFICES OF LAURENCE F. PADWAY
1516 Oak Street, Suite 109
Alameda, CA 94501
Telephone:   (510) 814-6100
Facsimile:   (510) 814-0650


Attorneys for Plaintiff


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA


LINDA BURGESS,                              CASE NO. C07-05310 JSW

        Plaintiff,

                                            **MEMORANDUM AND OPPOSITION**
v.                                          **TO DEFENDANT'S MOTION FOR**
                                            **SUMMARY JUDGMENT AND REPLY**
TOWNSEND AND TOWNSEND                        **IN SUPPORT OF PLAINTIFF'S**
AND CREW LLP                                **MOTION FOR SUMMARY JUDGMENT**
LONG TERM DISABILITY PLAN,

        Defendant,


THE PRUDENTIAL INSURANCE
COMPANY OF AMERICA,


        Real Party in Interest.

TABLE OF CONTENTS

PAGE

1.    The Court Should Grant Ms. Burgess Summary Judgment Because

       Any Fair Reading of the Record Shows that She Remains Disabled .........................1

2.    Cross-Motions For Summary Judgment in ERISA Cases are Vehicles

       For Bringing the Case to the Court for Decision Not for Identifying

       Triable Issues ...........................................................................................................2

3.    Even Prudential's Efforts to Compile a Biased Administrative Record

       Cannot Obscure Mrs. Burgess' Right to Benefits ........................................................3

4.    Prudential Cherry-Picked the Record In Order to Deny Benefits ..............................6

5.    Prudential And Its Consultants Failed to Consider Pain as a Disabling

       Condition ...................................................................................................................10

6.    Dr. Howard's Report Should be Discounted ...............................................................11

7.    Dr. Schroeder's Report Should be Discounted ...........................................................14

8.    Both Defense Consultants Fail to Consider the Combined Effect of

       Co-Morbid Conditions .............................................................................................15

9.    Conclusion ................................................................................................................16

1
2

TABLE OF AUTHORITIES

<u>PAGE</u>

3    *Bendixen v. Standard Insurance Co.*, 185 Fed. 3d 939 (9th Cir. 1999) ..................................2

4

5    *Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003) ...........................................12

6

7    *Booton v. Lockheed Medical Benefit Plan*, 110 Fed. 3d 1461, 1463 (9th Cir. 1997) .............5, 14

8

9    *Brown v. Baker Hughes, Inc.* 433 Fed. Supp. 2d 1094 .........................................................2

10

11   *Egan v. Mutual of Omaha Ins. Co.* , 24 Cal 3d 809, 819 (1979) ...........................................3, 8, 9

12

13   *Gilliam v. Nevada Power Co.* 488 F.3d 1189, 1192 (9th Cir. 2007) ......................................2, 3

14

15   *Kearney v. Standard Insurance Co.*, 175 Fed. 3d 1084 (9th Cir. 1999) ................................2

16

17   *Mariscal v. Old Republic Life Ins. Co.* 42 CA4th 1617, 1624, 50 CR2d 224, 227-228

18   (1996)(cited with approval in *Wilson v. 21st Century Ins. Co.*, 42 C4th 713, 721 (2007) ....9

19

20   *McCormick v. Sentinel Life Ins. Co.* , 153 Cal App 3d 1030, 1046-1048(1984) ...................9

21

22   *Regula v. Delta Family Care Disability Survivorship Plans*, 266 Fed 3d 1130,

23   1143 (9th Cir. 2001) ..........................................................................................................12

24
25
26
27
28

1

**1. The Court Should Grant Ms. Burgess Summary Judgment Because Any**

2

**Fair Reading of the Record Shows that She Remains Disabled.**

3

4      In order to reach its goal of terminating Mrs. Burgess' disability, Prudential and its

5   consultants violated the basic rule under ERISA that the insurer must provide a full and fair

6   hearing, and Prudential violated its duty under California law to conduct a thorough and

7   unbiased investigation of the claim.  We can group Prudential's principal failures into three

8   areas:

9

10      1) Prudential failed to consider pain as the disabling impairment – Ms.

11      Burgess' reports to Prudential concerning her pain were largely not

12      even included in the materials sent to the Prudential consultants;

13

14      2) The synergistic effect of the combination of the hammertoe surgery,

15      fibromyalgia, trochanteric bursitis and sacroiliac joint dysfunction,

16      depression, deconditioning and obesity.  Instead, Prudential and its

17      consultants considered the various conditions (at least those that it

18      considered at all) as if each of them were the only illness and assessed

19      the likely impact on work capacity from that viewpoint;

20

21      3) Prudential substituted arbitrary estimates of what Prudential

22      speculated recovery time should be, or abilities ought to be, instead of

23      accepting reports by Mrs. Burgess and her physicians of what actually

24      occurred, based upon her ability and her pain tolerance.

25

26

27

28

**2.  Cross-Motions For Summary Judgment in ERISA Cases**
**are Vehicles For Bringing the Case to the Court for Decision**
**Not for Identifying Triable Issues.**

At the outset, defendant misstates the standard of decision and the standard of review.  Ordinarily, of course, summary judgment motions rise and fall on the existence or non-existence of disputed issues of material fact.  But

> [i]n the ERISA context, summary judgment is merely a vehicle for
> deciding the case; the factual determination of eligibility for benefits is
> decided solely on the administrative record, and 'the non-moving party
> is not entitled to the usual inferences in its favor.'

*Gilliam v. Nevada Power Co.* 488 F.3d 1189, 1192 (9th Cir. 2007).

This represents an evolution in the case law.  The majority of an en banc court in *Kearney v. Standard Insurance Co.*, 175 Fed. 3d 1084 (9th Cir. 1999) called for a two step process, with the Court first reviewing the evidence to see if there were a triable issue, and then reviewing the same evidence in a bench trial from a slightly different perspective, to determine its persuasiveness.  The Ninth Circuit in *Bendixen v. Standard Insurance Co.*, 185 Fed. 3d 939 (9th Cir. 1999) moved to the better view of summary judgment as simply a vehicle for bringing the case before the Court for decision, and limited *Kearney's* cumbersome two step process to cases involving *de novo* review, presumably because of the possibility that material outside the record would be presented in those cases.

In *Brown v. Baker Hughes, Inc.* 433 Fed. Supp. 2d 1094, summary judgment was said to be merely the vehicle for the trial court to review the benefit decision without reference to

whether review was *de novo* or deferential, although the authority cited, *Bendixen*, *suora*, limited the rule to deferential review cases.  And in *Gilliam*, *supra*, the Ninth Circuit applied the summary judgment as merely the vehicle in a *de novo* review case relying upon authority from the first circuit which has well settled this special use of summary judgment regardless of the standard of review.

### 3.  Even Prudential's Efforts to Compile a Biased Administrative Record Cannot Obscure Mrs. Burgess' Right to Benefits.

More than a quarter century ago, the California Supreme Court set the standard for claims investigations by disability insurers:

"(I)t is essential that an insurer fully inquire into all possible bases that might support the insured's claim ... (A)n insurer cannot reasonably and in good faith deny payments to its insured without thoroughly investigating the foundation for its denial."

*Egan v. Mutual of Omaha Ins. Co.* , 24 Cal 3d 809, 819 (1979).

Congress, five years earlier, had enacted ERISA and provided that every employee benefit plan would provide for "a full and fair review" by the plan fiduciary of decisions denying benefits.

We would only ask Prudential, if it were the claimant who was compiling the record, whether these tactics would be acceptable:

1. Prudential never asked any of Ms. Burgess' physicians to explain the reasons for

any of their restrictions and limitations for her.[1] See Pru 512, 603, 607, 608, 616, 617. But in every case they did ask for an explanation of the reasons for the opinions from their own consultants. Pru Pru 540, 541, 585, 587 If everyone had followed Prudential's directions, the Court would have an administrative record in which the treating physicians would have an unexplained statement of their diagnoses, restrictions and limitations, whereas the Prudential consultants would have explanations with their statements.

2. Prudential never credited any of the treating physicians, regardless of their training and experience, but always credited every single one of the Prudential consultants, regardless of their lack of training and experience. Thus, the Prudential nurse who had never met Ms. Burgess was credited over the treating psychiatrist, who had extensive clinical experience with her,[2] a chiropractor of no known podiatric experience who had never seen Ms. Burgess was credited over the surgeon who actually operated on her and actually observed her post-operative condition. Compare Pru 529 with Pru 503, 501.

3. Prudential provided its "independent" doctors with the reports from the treating

---

[1] The Attending Physician Statement form used by Prudential asks the physician to identify work restrictions, and to place the insured into a job category of sedentary, light, medium, heavy, very heavy or other, but it does not ask for any explanation or for a reference to the supporting findings. The APS form for this claim was filled out only by Dr. Hershman, Pru 513.

[2] Compare Pru 546-547, Prudential employed nurse with Pru 186-187 (Psychiatrist disability notes) and psychiatric records at Pru 161-187 and 452-475. Decision accepting psychiatric nurse who reviewed records only over treating psychiatrist is at Pru 597. In *not one instance* is the treating psychiatrist credited over the nurse.

1   physicians so that they could be criticized, but never provided the reports from the Prudential

2   consultants to the treating physicians so that they might be scrutinized.

3

4        4.  Prudential credited nothing from Ms. Burgess' five page single spaced written

5   statement, (which Prudential failed to provide to the Prudential consultants), nor any of the

6   information concerning her status which Ms. Burgess provided in interviews to Prudential claims

7   personnel (which Prudential also failed to provide to its consultants). We discuss this in more

8   detail below in 5, *infra*.

9

10       5.  Rejected Ms. Burgess' claim that she could only stand for about three minutes

11  (Dr. Kaye, 11/16/06, Pru 196)[3] because none of her physicians had actually measured that time

12  period, while accepting a restriction of 30 minutes on walking based upon the speculation of the

13  Prudential consultant, Dr. Howard, Pru 10, who cites no literature to support his speculation, and

14  since the limiting factor is, as Dr. Pinckney notes, pain, it seems quite unlikely that it would be

15  capable of determination by reference to some universal standard, anyway.  And if Prudential

16  had needed the time period measured, then it was incumbent upon Prudential to so inform Mrs.

17  Burgess as part of its duty to tell the beneficiary, in plain English, what she must due to obtain

18  the benefits. ERISA requires a meaningful dialogue between the Plan and the beneficiary and if

19  the Administrator needs additional information in order to award benefits, it must set forth, "a

20  description of any additional material or information necessary for the claimant to perfect the

21  claim and an explanation of why such material or information is necessary." *Booton v. Lockheed*

22  ─────────────────

23       [3]Other physicians refer to diminished ability to stand but not specifically three minutes.

24  Dr. Davis notes Mrs. Burgess is  "unable to stand, sit or walk for any prolonged period of time,"

25  Pru 215, and Dr. Hersham noted she had "trouble standing for any long periods of time,"  Pru

26  493. Dr. Pinkney reported that her "pain is constant and worse with prolonged ... walking, sitting

27  and standing."  Pru 190.

28

1   *Medical Benefit Plan*, 110 Fed. 3d 1461, 1463 (9th Cir. 1997).

2

3           For all of these reasons, Prudential did not act like an unbiased fiduciary but as an

4   adversary bent on denial of the claim.  While in one sense this should not affect the outcome of

5   the case, since review is *de novo*, it would be a mistake to underestimate the ability of one

6   determined to control the content of the administrative record to influence the outcome of a

7   claims decision.

8

9           **4.  Prudential Cherry-Picked the Record In Order to Deny Benefits.**

10

11          Prudential granted disability benefits for three months, based upon Dr. Hershman's

12  initial estimate of the time required for Mrs. Burgess to recover from the bilateral hammertoe

13  and neuroma surgery he was performing.  Pru 618.  Dr. Hershman initially anticipated a return to

14  work date of November 14, 2005.  Pru 508.   As early as October 14, 2005, however, Dr.

15  Hershman determined the recovery was not going as quickly as he had anticipated, and he

16  extended the disability until December.  Pru 505.   On November 5, he sent a note to Prudential

17  that he had seen Mrs. Burgess that morning that she continued "to swell and have pain in her

18  feet," that she could not "stand, walk or sit prolong(sic)  periods at a time." Pru 503.

19

20          On December 1, 2005, Dr. Hershman provided two notes.  One note reads (Pru

21  492):

22

23          Mrs. Burgess continues to heal satisfactorily from bilateral neuroma

24          resection and hammertoe repair.  She is back in shoes.  We will

25          continue to follow her conservatively as she heals.

26

27  The other note, titled "To Whom It May Concern" reads (Pru 491):

28

1    "Please excuse Mrs. Linda Burgess from work on December 1, 2005

2    until January 2, 2006.

3

4    Explanation: Patient was seen today.  She continues to experience pain

5    and swelling.  Due to pain/swelling cannot wear closed shoes.  Her

6    disability has been extended."

7

8    The file contains a disability form completed for the Employment Development Department

9    signed by Dr. Hershman on November 21, 2005 (Pru 493) which states:

10

11    "Patient is experiencing difficulty bearing weight due to pain and

12    swelling (post-operative). She is also having trouble standing for any

13    long periods of time."

14

15    The claim manager for Prudential spoke with Mrs. Burgess on December 5, 2005 (Pru 527):

16

17    "She explains that her feet are still very swollen.  She cannot walk for

18    long periods.  Takes many breaks while walking through her house.

19    Her husband has to drive her as it is the balls of her feet that are

20    affected and she cannot operate the pedals due to pain/swelling...  I

21    explained that Dr. Hershman said she couldn't work because she

22    couldn't wear a closed toe shoe.  I asked if this was a requirement of

23    her job and she said no.  The reason she cannot work is really due to

24    the swelling and decreased activity tolerance.  She does comment that

25    she is definitely progressing and a RTW [return to work] is the only

26    plan that she has...

27

28

1    A second conversation on December 28 is also reported (Pru 527):

2

3            "Her employer gave her job away.  She notes that basically, she cannot

4            work because of pain.  She is in a lot of pain.  She comments that she

5            also has fibromyalgia and that one of the symptoms of this is a

6            heightened sensitivity to pain...

7

8            I discussed with her that Dr. Hershman's records do not indicate that

9            she is in pain...

10

11   Finally, there is another "To Whom It May Concern" note dated January 9, 2006 (Pru 486)

12   which extends Mrs. Burgess' disability until April 3, 2006 with the explanation

13

14           "difficulty bearing weight due to pain and swelling post-operative."

15

16   On January 3, 2006, a nurse, a chiropractor, a vocational specialist and a claim manager met to

17   terminate benefits. They determined that the reasonable time allowed for recovery from the

18   surgery would be 10-12 weeks, and then allowed an additional 2-4 weeks as Mrs. Burgess was

19   quite overweight.  No basis for these time periods appears in the records.  The "analysis" at Pru

20   529 mentions the "discrepancy" in the two notes dated December 1, 2005, but, of course, there is

21   no real discrepancy.  The two notes are consistent with continued slow healing, some use of open

22   toed shoes, and continued pain and disability.  And if there were some perceived discrepancy,

23   then the "thorough" investigation required by *Egan v. Mutual of Omaha Ins. Co.* , 24 Cal 3d 809,

24   819 (1979), would require a phone call to the physician to clarify the matter:

25

26           "Although presumably one phone call to the doctor could have

27           supplied the omitted information (Insurance Co.) offers no explanation

28

1    for why it did not adopt this course of action." It cannot avoid its duty

2    to investigate simply because the insured did not "dot the i's or cross

3    the t's. "

4

5

6    *McCormick v. Sentinel Life Ins. Co. ,* 153 Cal App 3d 1030, 1046-

7    1048(1984)

8

9    In denying benefits, Prudential arbitrarily ignored Dr. Hershman's extension of his initial

10   estimate of Ms. Burgess's postsurgical period of disability.  In doing this, Prudential  (a) failed to

11   ask Dr. Hershman for an explanation (assuming that his note was insufficient) (b) failed to seek

12   the opinion of another medical professional and (c) lied to Ms. Burgess, falsely telling her that

13   Dr. Hershman's records "do not indicate you are in pain," Pru 611, when his records were filled

14   with references to continued post-surgical pain.  Pru 491, 493. 494, 495, 501, 486.  Prudential

15   simply ignored evidence of continued pain and swelling in its file, evidence it had both from Dr.

16   Hershman and from Mrs. Burgess:

17

18   "An insurance company may not ignore evidence which supports

19   coverage. If it does so, it acts unreasonably towards its insured and

20   breaches the covenant of good faith and fair dealing."

21

22   *Mariscal v. Old Republic Life Ins. Co.* 42 CA4th 1617, 1624, 50 CR2d

23   224, 227-228 (1996)(cited with approval in *Wilson v. 21st Century Ins.*

24   *Co.*, 42 C4th 713, 721 (2007)).

25

26   Failure to contact the treating physician and ask for an explanation for the extension

27   of the disability would classically be treated as bad faith as a matter of law. *Egan v. Mutual of*

28

1    *Omaha Ins. Co.* 24 Cal. 3d 809, 819 (1979).

2

3          Further, it does not appear that the chiropractor, nurse and vocational expert had

4    any particular expertise either in foot surgery, fibromyalgia or depression, nor in how those three

5    illnesses might work together to cause a delayed recovery.  How, moreover, did they treat Mrs.

6    Burgess' complaints of continued pain?  Those complaints were later shown to be justified and

7    apparently related to peripheral neuropathy–but the neuropathy had not yet been diagnosed.  The

8    record does not tell us how these fiduciaries dealt with these issues.

9

10   And to ensure that its consultants followed Prudential's party line, Prudential did not provide

11   them with records of its conversations with Mrs. Burgess explaining that her foot was still

12   swollen, or with Dr. Hershman's January 9, 2006 note (Pru 486) (see list of medical

13   documentation provided to Dr. Howard at Pru 1).  As a result, Dr. Howard, who wrote the major

14   rheumatology report for Prudential, believes that Mrs. Burgess healed up from her foot surgery

15   much faster than she in fact did.  Pru 5.  Since his conclusions are "based on the documentation

16   reviewed," Prudential's failure to conduct the thorough investigation required by law, and its

17   failure to provide all of the documents to Dr. Howard makes his report unusable for the purpose

18   of denying disability benefits.

19

20          **5.  Prudential And Its Consultants Failed to Consider Pain as a Disabling**

21          **Condition.**

22

23          We pointed out in our opening brief that Prudential omitted from the Administrative

24   Record a five page single space statement of Mrs. Burgess.  Prudential responded by accusing

25   Mrs. Burgess of having not submitted that document to it.  But Prudential acknowledges receipt

26   of that statement in the second line of the text at Pru 553, and again at the last line on Pru 555.

27   Receipt of the statement is also acknowledged at Pru 578 on the lower half of the page.

28

1    But that statement, like Mrs. Burgess' discussions with Prudential concerning her

2   pain and disability at Pru 561, 563, 566 and 571, were not forwarded to Prudential's consultants.

3   See list of medical documentation at Pru 1.  Likewise, they are not discussed either in Dr.

4   Howard's report or Dr. Schroeder's (psychiatrist).

5

6    By managing the record in this fashion, Prudential eliminated much of the evidence

7   of pain and disability, and it made both its decisions and the reports of its consultants "garbage

8   in-garbage out."

9

10    The American Medical Association Guides to the Evaluation of Permanent

11   Impairment, 5th Edition, 2002, at p. 566, note:

12

13    It is considerably more difficult to provide a method for assessing

14    chronic, persistent pain than acute pain.  In chronic pain states, there is

15    often no demonstrable active disease or unhealed injury, and the

16    autonomic changes that accompany acute pain, even in the

17    anesthetized individual, are typically absent.

18

19   The AMA goes on to note that "pain can exist without tissue damage and tissue damage can

20   exist without pain.  In summary, there is no 'pain thermometer,' that is no biological measure

21   that correlates highly with individuals' complaints of pain."

22

23   Because of the nature of chronic pain, the importance of seeing Mrs. Burgess face to face,

24   following her over a period of time, and having the clinical picture that the treating physicians

25   get gives them a tremendous advantage in assessing this over those who are merely reviewing

26   records and looking for "objective" findings, since the objective findings may have little

27   correlation to the pain.  Given that the reviewer is already so disadvantaged, to deprive him or

28

her of the statements of the patient concerning how they feel reduces the review to the point
where it is meaningless.

### 6. Dr. Howard's Report Should be Discounted.

Dr. Howard is not as "independent" as Prudential would like the Court to believe.
Although the Court denied Mrs. Burgess' request to conduct discovery, which would have
allowed more detailed information to emerge concerning his bias, Dr. Howard was selected for
Prudential by MLS National Medical Evaluation Services, Inc.  The Ninth Circuit in *Regula v.
Delta Family Care Disability Survivorship Plans*, 266 Fed 3d 1130, 1143 (9th Cir. 2001)
abrogated on other grounds in *Black and Decker Disability Plan v. Nord*, 538 U.S. 822 (2003)
found it "troubling" when disability plans used repeatedly the same physicians for opinions, who
thereby gained a large financial incentive to render reports of "not disabled."  The MLS scheme
has exactly the same problem.  MLS provides doctors to do medical examinations and
consultations for insurance companies.  It rates the doctors, and doctors who get a "high" rating
get repeat business.  Depo. of Walkaus, exhibit 1 to the Dec. of L. Padway, pp. 4-8.  Obviously,
if a physician is not satisfying the customer...  This is precisely the problem about which the
Ninth Circuit was concerned in *Regula.*

We noted above that Dr. Howard was not provided with Mrs. Burgess' five page
written statement nor was he provided with with notes on her conversations with Prudential
where she described her difficulties.

We also noted that he was not provided with Dr. Hersham's last note, where Dr.
Hersham documented continued pain and swelling into early 2006.  Pru 486.  This may have
caused Dr. Howard to comment that Mrs. Burgess was found (Pru 10)

1    "as of December 1, 2005, by Dr. Hershman, to be able to wear shoes

2    *without difficulty* in one note... There is no other mention by any

3    provider that she has had edema or is unable to wear shoes.  There is

4    no measurement of her ability to stand, rendering her inability to stand

5    for more than three minutes self-reported, and not documented or

6    supported by any other evidence contained in the medical records."

7    (Emphasis added).

8

9         We have put the text of Dr. Hershman's records in our brief earlier.  The words

10   "without difficulty" are not Dr. Hershman's and seem unlikely in view of the rest of Dr.

11   Hershman's records, especially the portion not provided to Dr. Howard.  The records not

12   provided to Dr. Howard also provides evidence of edema (swelling) continuing into January,

13   2006.

14

15        Dr. Howard dismisses the fibromyalgia because it has not caused loss of motion and

16   there is no osteo arthritis or inflammatory process.  But as the Oxford Textbook of

17   Rheumatology teaches us, fibromyalgia is a disease which features "generalized chronic pain

18   and diffuse tenderness" at discrete sites, with "an absence of inflammatory or structural

19   musculoskeletal abnormalities."  Pru 38.  For this reason, "physical examination and laboratory

20   testing are unrevealing, except for the presence of pain on palpation of characteristic soft-tissue

21   sites, the tender points." *Ibid*.

22

23        Curiously, when asked " Is Mrs. Burgess' self-reported chronic pain supported by

24   or consistent with diagnostic testing and physical examination findings?"  Dr. Howard states

25   that:

26

27        "Her pain and dyesthesias associated with peripheral neuropathy is

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

supported by diagnostic testing-nerve conduction study by Dr.

Steinmetz, March 14, 2006, and fibromyalgia tender points

documented by three certified rheumatologists between 1999 and

2006."

If Dr. Howard means that Mrs. Burgess' chronic pain is supported by the tender points (i.e.,

fibromyalgia), then he is in agreement with the treating physicians, and it would seem that the

only real disconnect is that he does not have Mrs. Burgess' statement of t he extent of her pain

and disability.

Dr. Howard notes the "major depressive disorder" but "it is beyond the scope of

this reviewer to comment concerning the degree of depression and whether it is resulting in

functional impairment."  But since depression exacerbates pain, this a major omission, which we

discuss in section 8, *infra.*

Finally, Dr. Howard concedes some impairment due to peripheral neuropathy

and he speculates that this would limit the ability to stand to 30 minutes.  But he has no

explanation for 30 minutes as opposed to 3 minutes.

Taken as a whole, Dr. Howard's report does not defeat Dr. Davis' careful review of

the history and examination of Mrs. Burgess and his opinion that she is, indeed, totally disabled.

### 7.  Dr. Schroeder's Report Should be Discounted.

Prudential also relies on an "independent" medical report from Dr. Mark Schroeder.

Dr. Schroeder testified in another case, to making hundreds of thousands of dollars a year

writing defense psychiatric reports for the insurance industry, and his bias certainly falls within

1   the concern of the Ninth Circuit in *Regula*.  See Deposition of Mark Schroeder, M.D.

2

3        Dr. Schroeder objects that Mrs. Burgess does not have "objective" evidence of

4   impairment, and that the records are not sufficiently detailed in many areas.  But, these

5   documentation objections were first raised at the end of the administrative process, which is too

6   late.  "  *Booton v. Lockheed Medical Benefit Plan*, 110 Fed. 3d 1461, 1463 (9th Cir. 1997).

7   Moreover, many of these objections would have been obviated if Dr. Schroeder had been

8   provided with a description of how Mrs. Burgess spent her typical day, which is contained in the

9   five page single spaced statement that Prudential failed to give him.

10

11       Finally, Dr. Schroeder fails to address the interrelationship of the psychiatric

12  condition with the physical condition.

13

14       **8.  Both Defense Consultants Fail to Consider the Combined Effect of**

15       **Co-Morbid Conditions.**

16

17       "Pain is depressing and depression causes and intensifies pain."

18

19       Harvard Mental Health Letter, Exhibit 3 to the Declaration of L. Padway.

20

21       Prudential and its consultants try to isolate each condition and assign an impairment

22  to it.  But human beings are more than the sum or their parts.  Disabilities work in combination,

23  and the question is not whether the fibromyalgia alone is impairing, or the peripheral neuropathy

24  alone is impairing, or the depression alone is impairing, but whether all of these put together

25  preclude Mrs. Burgess from working.

26

27       Dr. Davis, in his careful and lengthy analysis, has considered Mrs. Burgess with all

28

1    of her conditions together.  For that reason, his opinion that she is disabled is more persuasive

2    than the opinions of Prudential and its consultants that she is not disabled.

3    //

4    //

5    //

6    //

7    //

8    //

9    //

10   //

11   //

12   //

13        **9.  Conclusion.**

14

15        The disabling condition is pain.  Mrs. Burgess clearly cannot work at any job.  On

16   review of this claim *de novo*, the Court should award benefits to the date of trial, and direct

17   defendant to continue to pay benefits until such time as Mrs. Burgess reaches the age of 65 or

18   until her health recovers so that she is not longer entitled to them.

19

20        Dated: September 8, 2008

21

22                          /s/_____

23                          Laurence F. Padway

24

25

26

27

28